ROYAL GLOBE INSURANCE
COMPANY, Petitioner,

v.

BAR CONSULTANTS, INC., Respondent.

No. B–7765.

Supreme Court of Texas.

Feb. 14, 1979.

Rehearing Denied March 28, 1979.

Wilson & Grosenheider, David Moore, Austin, and James E. Ross, Houston, for petitioner.

Hooper, Robinson & Moeller, Malcolm Robinson, Austin, for respondent.

SPEARS, Justice.

This is a deceptive trade practice case. The principal question presented on this appeal is whether a misrepresentation about coverage afforded by a policy of insurance, made by the insurance company's local recording agent, is a deceptive trade practice under Texas statutes for which the insurance company as principal is liable for treble damages.

Petitioner Royal Globe Insurance Company, defendant in the trial court, is appealing from a judgment obtained by Plaintiff and Respondent, Bar Consultants, Inc., for violation of the Deceptive Trade Practices Act [1] and Article 21.21 [2] of the Texas Insurance Code. The Court of Civil Appeals affirmed, 566 S.W.2d 724. We affirm, but on different grounds.

Bar Consultants, Inc. operated a bar near the campus of The University of Texas known as "The Bucket." The president of Bar Consultants, Inc., John Barber, testified that he purchased a policy of insurance from Tully Embrey, an agent of Royal Globe, sometime prior to September 1975.[3] The one-year policy was renewed on September 4, 1974 and again on September 4, 1975. Each contained identical terms which included a vandalism and malicious mischief endorsement. Barber testified that before the first policy was written, he had a lengthy discussion with Embrey about the problem of vandalism at which time Embrey assured him that he was "totally covered" from losses caused by vandalism.[4] His testimony was uncontradicted.

---

1. Tex.Bus. & Comm. Code Ann. § 17.46 et seq. (Supp.1978); abbreviated hereinafter as DTPA.

2. All references to Article 21.02–21 are to the Texas Insurance Code.

3. Plaintiff's Exhibit 10 shows policy dates of September 4, 1973 to September 4, 1974.

4. Barber's testimony was as follows:

The policy in question is a Texas Standard Policy covering fire and extended coverage. An endorsement attached includes coverage for vandalism and malicious mischief. The insurance memorandum says that the property covered is "[o]n the contents in the . . . building," giving the address of "The Bucket." The term "contents" is defined in the policy.

On January 31, 1974, during the policy year 1973–74, Royal Globe paid a vandalism claim filed by Bar Consultants. The description of the damage on the proof of loss form was "Vandals inflicted damage in the bathroom area for which insured is liable under lease contract."

On the night of March 5, 1976, the men's rest room at The Bucket sustained extensive damage. The main sewer line was stopped up by one or more plastic cups; the flush valve part of the urinal had been torn away. The stoppage in the main sewer line caused the facilities in both men's and women's rest rooms to overflow. The partitions between the commodes were torn down, water was nearly an inch deep on the floor of the rest room and out into the hall. The acoustical ceiling had been torn down, as had the light fixtures. In addition, the floor tiles came loose and the carpet was ruined. The trial court found that the damage was caused by vandalism or malicious mischief and that it cost $1,735.15 to repair.

The day following the damage Barber called Embrey's office. Embrey was not in, but his secretary, after a discussion with Barber, told Barber to "go ahead; have the work done. You're covered under the policy." Later Barber talked with Embrey who told him the same thing. Subsequently, Royal Globe refused the claim, and Bar Consultants filed this suit against Embrey and Royal Globe.[5]

Bar Consultants alleged that the damages were covered by its policy and asked for actual damages plus a penalty of 12% interest and attorney's fees, or in the alternative for actual and exemplary damages because of the fraudulent misrepresentations of the agent, and in the further alternative for treble damages, attorney's fees and return of premiums because, if in fact the policy did not cover such damage, then such representations and policy terms were false, deceptive and misleading, in violation of Article 21.21, Section 4(1), Texas Insurance Code, and Section 17.46(a)(12)[6] of the DTPA.

The trial court found that under Article 21.02 and under the facts and circumstances of this case Tully Embrey was "at all times an agent" for Royal Globe; that Embrey, as Royal Globe's agent, represented to Bar Consultants that the policy covered all damages caused by vandalism, including the damage in question; and that the policy did

"Q. When you secured the first policy from Mr. Embrey, did you sit down and discuss with him what your needs and concerns were concerning what coverage you wanted?
"A. Yes, we did. We sat down with him at length and described all the problems that we—or I had occur over the past years that I had been in this business, and one of the things that we stressed was vandalism, liability insurance and fire. And numerous times, we had discussed this while he was in the process of selling us the policy. We had gone out to his office at a time I believe he was in the Franklin Savings and Loan Building handling a lot of their work, and he came very highly recommended to us. And we sat down many different times and explained to him exactly what we wanted, and he assured us that we would be covered for everything that we had discussed.

"Q. And he never told you that you would be covered for everything except somebody destroying leasehold improvements?
"A. No, he did not tell us that.
"Q. He told you—there were no exclusions as far as his representations to you?
"A. In fact, we sat down and went over the lease with them, and I believe in the lease it says that we are responsible for all of the property within the confines of the walls of what was then called The Bucket.
"Q. And he assured you you were totally covered?
"A. Yes, he did."

5. Tully Embrey was dismissed as defendant prior to trial.

6. An apparent misreference; subsection (a) has no paragraph (12) as does (b), which was intended.

not cover the damage in question.[7] The trial court awarded Bar Consultants a judgment for $5,205.45, as treble the cost of repairs, plus $1,991.00 attorney's fees against Royal Globe. The Court of Civil Appeals affirmed, holding that Embrey's statement on the day after the loss of March 5 that the loss was "covered" under the policy, when in fact it was not, was a violation of both Article 21.21 of the Insurance Code and Section 17.46 of the Deceptive Trade Practices Act.

In order to determine what is a deceptive trade practice or act, as that term applies to a local recording agent for an insurance company, it is necessary to look at the definition of such act or practice given by the legislature. Section 16 of Article 21.21 declares that a cause of action for treble the actual damages may be brought by:

"Any person who has been injured by another's engaging in any of the practices (1) declared in Section 4 of this Article *or* (2) in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance *or* (3) in any practice defined by Section 17.46 of the Business and Commerce Code, as amended, as an unlawful deceptive trade practice . . . ." (Emphasis and numbering added.)

We will therefore examine each of the three cumulative definitions of deceptive trade practices or acts. The first is set out in Section 4 of Article 21.21 which declares in part:

"Sec. 4. *Unfair Methods of Competition and Unfair or Deceptive Acts or Practices Defined.*—The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

"(1) *Misrepresentations and False Advertising of Policy Contracts. Making,* issuing, circulating, or causing to be made, issued or circulated, *any* estimate, illustration, circular or *statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby* . . . ." (Emphasis supplied.)

The second reference to a deceptive trade practice or act made by Section 16 is "in rules or regulations lawfully adopted by the [State] Board [of Insurance] under this Article . . . ." Pursuant to Section 13 of Article 21.21 the Board in 1971 adopted rules and regulations prohibiting "any trade practice that is a misrepresentation of an insurance policy," including both material misrepresentations of fact and of law, whether done "directly or indirectly," and irrespective of "capacity or connection with such insurer."[8]

7. Our examination of the policy does not compel the conclusion of the trial court that the loss was not covered; however, that question is not before us.

8. Texas State Board of Insurance, Regulation In Respect to Insurance Trade Practice, Advertising and Solicitations, Docket No. 18663, Dec. 3, 1971, reads in part:

"Sec. 1. DECEPTIVE ACTS OR PRACTICES OF INSURERS, AGENTS, AND CONNECTED PERSONS. PURPOSE OF REGULATION. It is the purpose of these Rules and Regulations to further define and state the standards that are necessary to prohibit deceptive acts or deceptive practices by insurers and insurance agents and other persons in their conduct of the business of insurance or in connection therewith, whether done directly or indirectly, and irrespective of whether the person is acting as insurer, principal, agent, employer, or employee, or in other capacity or connection with such insurer.

". . .

"Sec. 4. UNFAIR TRADE PRACTICES PROHIBITED. (a) Misrepresentation of insurance policies, unfair competition, and unfair practices by insurers, agents and other connected persons are prohibited by Article 21.20 and Article 21.21 or by other provisions of the Insurance Code of Texas and by the rules and regulations of the State Board of Insurance. No person shall engage in this State in any trade practice that is a misrepresentation of an insurance policy, that is an unfair method of competition, or that is an unfair or deceptive act or practice as defined by these and other Rules and Regulations of the State Board of Insurance authorized by the Code.

"(b) Irrespective of the fact that the improper trade practice is not defined in any other section of these Rules and Regulations, no person shall engage in this State in any trade practice which is determined pursuant by law to be an unfair method of competition or an

The third definition of a deceptive trade practice or act incorporated into Article 21.-21, Section 16, is found in Section 17.46 of the DTPA. Subsection (a) of Section 17.46 declares unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Subsection (b) lists specific acts or practices which are included in the definition of "false, misleading, or deceptive acts or practices." Subsection (b)(12) prohibits:

". . . representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve . . . ."

Royal Globe by its first point of error contends that there is no evidence that its agent Embrey had authority to make statements and representations that were binding upon Royal Globe. Having determined what activity is prohibited, it is necessary to examine Embrey's legal relationship with Royal Globe and to determine the extent to which Royal Globe is responsible in law for his actions in misrepresenting policy coverage.

 It is clear from the record before us that Tully Embrey was the local recording agent of Royal Globe as that term is defined in Article 21.14, Section 2:

". . . a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company . . to solicit business and write, sign, execute and deliver policies of insurance, and to bind companies on insurance risks . . ."

Embrey issued the policy in question from the "Tully Embrey Insurance Agency"; he signed the policy for Royal Globe as its agent and Royal Globe has not denied his authority to do so.

In describing the circumstances of a local recording agent's authority, this Court said in *Shaller v. Commercial Standard Insurance Co.*, 158 Tex. 143, 309 S.W.2d 59 (1958), at page 63:

". . . The purpose of the statute was to vest local recording agents with authority co-extensive with that of the company insofar as writing insurance is concerned and to remove all questions of the local agent's actual or apparent authority from the field of cavil or dispute. . . ."

The trial court found that Embrey was Royal Globe's agent under the provisions of Article 21.02, which says:

"Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or

unfair or deceptive act or practice in the business of insurance.

"Sec. 5. MISREPRESENTATION DEFINED. STANDARDS FOR DETERMINING MISREPRESENTATION. The term misrepresentation, or the prohibited conduct, act or practice that constitutes misrepresentation by a person subject to the provisions of this regulation, is defined as any one of the following acts or omissions:

"(a) any untrue statement of a material fact; or

"(b) any omission to state a material fact necessary to make the statements made (considered in the light of the circumstances under which they are made) not misleading; or

"(c) the making of any statement in such manner or order as to mislead a reasonably prudent person to a false conclusion of a material fact; or

"(d) any material misstatement of law; or

"(e) any failure to disclose any matter required by law to be disclosed, including failure to make disclosure in accordance with the provisions of these and other applicable regulations of the State Board of Insurance."

adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, *shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. . . ."* (Emphasis supplied.)

The final words, "in this chapter," refer to Chapter 21, which includes Article 21.21, the article prohibiting deceptive acts or practices.

■ Royal Globe cites *Hartford Fire Insurance Company v. Walker,* 94 Tex. 473, 61 S.W. 711 (1901), in which this Court held that the predecessor of Article 21.02 did not confer any power or authority to contract beyond what the law and the terms of his appointment already gave him. Not only was this case decided before Article 21.21 was enacted,[9] but it and others cited by Royal Globe deal with the authority of a soliciting agent, which is clearly much more limited than the authority of a local recording agent authorized to sign and execute insurance policies. *International Security Life Ins. Co. v. Finck,* 496 S.W.2d 544 (Tex. 1973); *Mutual Life Ins. Co. of N.Y. v. Anderson,* 408 S.W.2d 335 (Tex.Civ.App.1966, writ ref'd n.r.e.). In *Home Ins. Co. of N.Y. v. Roberts,* 129 Tex. 178, 100 S.W.2d 91 (Tex.Comm.App.1937, opinion adopted), we held that a recording agent could orally waive a policy provision despite a policy provision to the contrary. See also *N.Y. Fire Insurance Co. v. Reed,* 138 S.W.2d 138 (Tex.Civ.App.1939, writ ref'd). The one case cited by Royal Globe which dealt with local recording agents, *State Farm Mutual Automobile Ins. Co. v. Matlock,* 462 S.W.2d 277 (Tex.1970), concerned representations made *after* the loss occurred. More importantly, *none* of the cases cited by Royal Globe involved questions of deceptive acts or practices defined by the statutes here invoked; all involved the questions of con-

tractual liability. *Hartford Fire Insurance Company v. Walker, supra; State Farm Mutual Automobile Ins. Co. v. Matlock, supra; International Security Life Ins. Co. v. Finck, supra; Great American Casualty Co. v. Eichelberger,* 37 S.W.2d 1050 (Tex.Civ.App.1931, writ ref'd); *Reeves v. New York Life Insurance Company,* 421 S.W.2d 686 (Tex.Civ.App.1967, writ ref'd n.r.e.); *Wyche v. Trinity Universal Ins. Co.,* 198 S.W.2d 158 (Tex.Civ.App.1946, no writ); *Westbrook v. Millers Mutual Fire Ins. Co. of Texas,* 374 S.W.2d 248 (Tex.Civ.App.1963, no writ).

■ We are not to be understood as holding that the statutory authority granted an agent under Article 21.02 authorizes that agent to misrepresent policy coverage and bind the company to terms contrary to those of the written policy; that question was decided by us in *International Security Life Ins. Co. v. Finck, supra.* However, an insurance company that authorizes an agent to sell its policies may not escape liability for the misrepresentations made by that agent which violate Article 21.21 or Section 17.46 merely by establishing that the agent had no actual authority to make any such misrepresentation.

■ Neither Article 21.21 nor Section 17.46(b)(12) require either expressly or by implication that an agent have actual authority before an insurance company can be found to have vicariously committed a deceptive act or practice. Section 1 of the regulations of the Board of Insurance impliedly negates such a requirement when they include acts

". . . whether done directly or indirectly, and irrespective of whether the person is acting as insurer, principal, agent, employer or employee, or in other capacity or connection with such insurer." *See* note 8, *supra,* for full text.

To require actual authority would emasculate both Article 21.21 and Section 17.46 and provide a violator with an easily manufactured defense. It would only be necessary for a corporate principal to deny that an agent had actual authority to perform

---

**9.** Article 21.21 was based on Article 5053, Rev.Stat.1925 (Acts 1909, p. 192) as amended.

an act, even though a reasonably prudent man, using diligence and discretion in view of the insurance company's conduct, would naturally suppose the agent possessed such authority.

There is even stronger evidence of legislative intent that the absence of actual authority of an agent is not a defense to a violation of Section 17.46 when the agent is clothed with apparent authority to do the act or make the representation. Section 17.46(c)(2) provides that in construing actions brought under the Act, the legislative intent is that:

". . . the courts to the extent possible will be guided by Subsection (b) of this section and the interpretations given by the federal courts to Section 5(a)(1) of the Federal Trade Commission Act."

Numerous federal decisions made applicable to this case by Section 17.46(c), hold that lack of actual authority is not a defense if the agent is acting within the apparent scope of his authority, and not even instructions not to mislead nor diligence in preventing the misrepresentations will exculpate the corporate principal. *Standard Distributors v. F.T.C.*, 211 F.2d 7 (2nd Cir. 1954); *Goodman v. F.T.C.*, 244 F.2d 584, 591–3 (9th Cir. 1957). See Maxwell, *Public and Private Rights and Remedies Under the Deceptive Trade Practices—Consumer Protection Act,* 8 St. Mary's L.J. 617, 638–39 (1977).

■ Embrey as a local recording agent for Royal Globe, had statutory authority under Article 21.02 and Article 21.14(2) to sell insurance policies for the company and by necessary implication to represent the coverage afforded by such policies to the consumer. If his representations were false as the trial court here found, under the explicit language of Section 16, Article 21.-21 and Section 17.46(b)(12) of the DTPA, his actions constituted a deceptive act or practice for which his principal is accountable.

Though it may be harsh to hold a principal liable for the deceptive acts of his agents where he does not authorize or have knowledge that they occurred, such result is clearly called for by the legislature's enactment of the DTPA. *Woods v. Littleton,* 554 S.W.2d 662, 669–71 (Tex.1977). The rationale behind this agency principle is expressed by Justice Learned Hand when he wrote:

". . . since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." *Standard Distributors v. FTC,* supra, at p. 15.

■■ By its next point of error, Royal Globe argues that Bar Consultants has presented no evidence that it was "injured" or suffered damages as a result of Embrey's representations. We agree with Petitioner's contention with regard to the post-loss representation of coverage made on March 6, but hold that there is evidence that Bar Consultants was "adversely affected" and "injured" when it relied on the misrepresentations of coverage made by Embrey at the time of the initial policy in 1973 and impliedly made each time the policy was renewed. The injury to Bar Consultants was that it believed it was covered by a policy of insurance from any loss caused by vandalism when it was not so covered. Bar Consultants' damage was the reasonable and necessary cost of repairs made necessary by the vandalism. That belief was made even more logical and reasonable by the knowledge that, prior to renewing the policy, Royal Globe paid a claim for the same type damage to the bathroom area without questioning coverage, thus giving credence to the agent's previous misrepresentations.

Accordingly, the representations made by agent Embrey at the time the policy was sold in September 1973 and impliedly made to Bar Consultants upon each renewal do furnish a basis for deceptive act or practice liability of Royal Globe, and there is evidence to support the trial court's findings in this regard.

■ We disagree with the Court of Civil Appeals' holding that the representations made by Tully Embrey and his secretary *after* the loss had occurred constituted a deceptive trade act or practice. In the

first place, Embrey was in the business of selling insurance, not the business of adjusting claims, and his post-loss statement that "you're covered" under the policy was not within his actual *or* apparent authority. Secondly, there is no evidence that Bar Consultants, Inc. took any action based on the post-loss representation to its injury or damage. The evidence was clear that Bar Consultants, Inc. would have repaired the damages to the rest rooms regardless of the post-loss representation in order to open for business immediately, whether or not the loss was covered by insurance. Since Bar Consultants was going to have the damage repaired anyway, it could not have been "injured" or "adversely affected" by the post-loss representation. We agree with Petitioner Royal Globe that the Court of Civil Appeals was in error in holding that Bar Consultants relied on the post-loss representation of Embrey in a way that caused Bar Consultants any actual damages. *Garnor-Evans & Co. v. Webber,* 363 S.W.2d 383 (Tex.Civ.App. writ ref'd n.r.e.); *Reiger v. DeWylf,* 566 S.W.2d 47 (Tex.Civ.App.1978, writ ref'd n.r.e.).

The judgment of the Court of Civil Appeals is affirmed.