MID CENTURY INSURANCE
CO., Appellant,

v.

H & H MEAT PRODUCTS CO.,
INC., et al., Appellees.

No. 13–90–217–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 9, 1992.

---

John B. Skaggs, McAllen, for appellant.

George Almaraz, McAllen, for appellees.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

This is an appeal by Mid Century Insurance Company (Mid Century) from a judgment on the verdict that the company violated Texas Insurance Code Article 21.21 (Vernon Supp.1981). Intervenor Libby Ramirez, a Mid Century auto liability policy holder, was awarded treble damages totalling $99,000 plus interest. By fourteen points of error, Mid Century maintains that the trial court erred in submitting several jury questions, in entering a judgment on the verdict, and in awarding damages and interest. Specifically, by its first point of error, Mid Century contends that the trial court erred in submitting a jury question related to its waiver of the right to cancel Ramirez' policy, and in entering judgment thereon, because there was no evidence to support one or more of the necessary elements of waiver.

At issue is whether Mid Century waived its right to cancel Ramirez' auto policy because of representations made by its representatives regarding her policy. Ramirez contends that two Farmers Insurance[1] representatives told her that her claim was covered by insurance after her policy was canceled, causing her to detrimentally rely on those assurances. This, she argues, resulted in a waiver of Mid Century's cancellation of her policy, leaving it in force to satisfy her auto claim. Mid Century maintains, however, that neither of the representatives who informed Ramirez that she was covered by insurance had the authority to do so and therefore did not waive the cancellation of the policy.

It is undisputed that Ramirez purchased a six-month auto liability insurance policy from Mid Century effective September 1, 1981. The jury found that after making the first two premium payments, Ramirez failed to pay for the following two months and that her policy was properly canceled. The jury further found that Ramirez was sent a notice of cancellation on December 1, 1981 stating that the policy would terminate December 31, 1981. On January 11, 1982, Ramirez' fiancee, also covered by the policy, was involved in an auto accident with an H & H Meat Products Co. (H & H) truck while driving Ramirez' car. Ramirez then attempted to report the claim to her original insurance agent but could not reach him, as he was no longer an agent with the company. She then contacted a Farmers Insurance representative whose name she found in the phone book, and was directed to contact Jesse Ruiz, another Farmers agent. Although Ruiz was not in the office, his secretary, Rosa Charles, told Ramirez, "Don't worry about it. You have insurance, you're covered; it's just going to take time to process it." Some time later, Ramirez spoke with an unidentified male representative of a different Farmers branch who also told her that she was covered and that she would get her money back.

H & H filed suit against Ramirez' fiancee, Mike Vasquez, for damages sustained

---

**1.** Mid Century Insurance Company is one of three insurance companies making up the Farmers Insurance Group.

in the collision. The two parties submitted an agreed judgment in which Vasquez assigned the claim he presumed he had against Mid Century to H & H. H & H then sued Mid Century to recover under the policy; Ramirez and Vasquez intervened in that suit. The jury found waiver and the trial court entered a judgment on the verdict, in which it stated that Mid Century waived its right to cancel the subject insurance policy. Further, the jury found that because Mid Century failed to pay Ramirez on her claim, the company engaged in an unfair or deceptive act which was a producing cause of damages to Ramirez in violation of Tex.Ins.Code Ann. § 21.21 (Vernon Supp.1981)[2].

■ Mid Century contends that no evidence existed to support the jury finding of waiver. We agree. Where an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must show on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied); Tex.R.App.P. 74(d); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 364–68 (1960). We consider only the evidence and inferences therefrom that tend to support the finding, and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of America*, 774 S.W.2d 666, 668 (Tex.1989); *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989); *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). There was no evidence nor inferences therefrom which support the jury's finding of waiver in this case.

■ It is the insured's burden to prove that the insurance company waived cancellation of the insurance policy. Waiver may be shown by a statement made by an authorized agent of the insurance company proclaiming that the insured is still covered. *Aetna Ins. Co. v. Durbin*, 417 S.W.2d 485, 487 (Tex.Civ.App.—Dallas 1967, no writ). Similarly, waiver may be proved by intentional conduct on the part of the insurance company which is inconsistent with its initial claim of the right of cancellation. *American Casualty Co. of Reading v. Conn*, 741 S.W.2d 536, 539 (Tex.App.—Austin 1987, no writ).

To support her contention, Ramirez can show nothing more than that she spoke with two Farmers representatives who told her that she was covered, and that she received a questionnaire from Farmers regarding her policy, after the auto accident occurred. Regarding the people she spoke with, the first, Rosa Charles, was a secretary at the Jesse Ruiz Insurance Agency. The second was an unidentified representative in the Farmers Edinburg office. Both individuals told Ramirez after her accident occurred that her claim was covered by insurance. However, neither person had the authority to make such a statement regarding the settlement of Ramirez' claim.

■ On the basis of Jesse Ruiz's activities as shown in the record, Ruiz was presumably a Local Recording Agent as that term is defined in art. 21.14 § 2 of the Texas Insurance Code.[3] Section 2 provides, in pertinent part:

By the term "Local Recording Agent" is meant a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company or insurance carrier, including fidelity and surety companies, to solicit business and to write, sign, execute, and deliver policies of insurance, and to bind companies

---

2. The 1981 version of the Texas Insurance Code was in effect at the time Ramirez entered into her insurance policy contract with Mid Century and is therefore the controlling version in this case.

3. The Local Recording Agent has the broadest authority among insurance agents. The other type of local agent, the Soliciting Agent, merely

has the authority to solicit insurance *on behalf of* the local recording agent. *See* Tex.Ins.Code Ann. art. 21.14 § 2 (Vernon 1982). Therefore, whether Ruiz was a local recording agent or merely a soliciting agent, he and his employees had no authority to bind Mid Century with their statements.

on insurance risks, and who maintain an office and a record of such business and the transactions which are involved, who collect premiums on such business and otherwise perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public ...

Tex.Ins.Code Ann. art. 21.14 § 2 (Vernon 1981). This article is silent regarding any authority of a local recording agent to bind the principal insurance company by statements or agreements regarding settlement of claims after the insured sustains a loss. In fact, Texas courts have long established that a recording agent has no authority to bind the insurer via statements made after a loss occurs. *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694–95 (Tex.1979); *State Farm Mut. Auto. Ins. Co. v. Matlock*, 462 S.W.2d 277, 279 (Tex. 1970); *Westbrook v. Millers Mut. Fire Ins. Co.*, 374 S.W.2d 248, 249 (Tex.Civ.App.— San Antonio 1963, no writ).

*Royal Globe* is dispositive of the case at bar. In that case, Bar Consultants, Inc. (Bar) purchased a policy from Tully Embrey, an agent of Royal Globe, to insure its building. Bar was told that the policy would cover damages caused by vandalism. The day after the building was vandalized, Bar called Embrey's office to report the claim. Embrey was unavailable, but his secretary nevertheless told the insured that it was covered under the policy. Embrey later repeated the same assurance. In fact, Bar's damages were not covered by the policy and Bar sued Embrey and Royal Globe for making false, deceptive and misleading representations in violation of the Insurance Code. The Supreme Court held that representations made by a local recording agent and his secretary, after a loss had occurred, that the insured was "covered" under the policy was outside of the agent's actual and apparent authority. *Royal Globe*, 577 S.W.2d at 694–95. The court reasoned that, "[the recording agent] was in the business of selling insurance, not the business of adjusting claims ..." *Royal Globe*, 577 S.W.2d at 695.

Moreover, in *Durbin*, appellant insured argued on appeal that post-loss representa-

tions made by his local recording agent regarding notice waived the notice requirement in the policy. However, the "Conditions" section of Aetna's policy specifically stated that the terms of the policy could not be waived or changed without an "endorsement issued to form a part of this policy." *Durbin*, 417 S.W.2d at 487. The court held that the clear intent of the company and its insured was to limit the agents' actual and apparent authority to issuing policies and receiving notices and proofs of loss or claim. *Durbin*, 417 S.W.2d at 487.

In the case at bar, the "Changes" section in Part F of Mid Century's policy states,

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

After considering *Royal Globe*, we find that Rosa Charles, Jesse Ruiz' secretary, did not bind Mid Century with her post-loss representations that Ramirez was covered by insurance. Furthermore, the unidentified representative in the Edinburg office, whether it was a local recording agent office or not, cannot be said to have bound the insurance company by asserting that Ramirez was covered by insurance. Whether the man was a local recording agent himself, a soliciting agent, or merely an agent's employee, the record is devoid of evidence that he possessed the power to bind Mid Century with any post-loss assertions about insurance coverage.

Furthermore, we follow the reasoning of the *Durbin* Court and find that Ruiz, his secretary, and the unidentified Farmers representative possessed limited authority pursuant to the wording of the insurance policy, and their powers failed to include waiving provisions within that policy.

■ Equally persuasively, Ramirez may not assert a claim for misrepresentation if she knew that her policy was canceled. *Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex.App.—Houston [14th Dist.] 1989, no writ). "Necessity of tendering premium payments to avoid policy termination is stated in the policies. An

insured will be deemed to know the contents of the contract he makes." *Shindler,* 768 S.W.2d at 334. In *Shindler,* plaintiff bought two life insurance policies, the terms of which required the insured to pay yearly premiums to avoid cancellation. Similar to the case at bar, the evidence showed that Shindler failed to pay all but the first premium and that his policies were canceled in June, 1981. Three years later, Shindler learned for the first time from the insurance company that the policies had been canceled. He demanded reinstatement. When the insurance company failed to comply, Shindler sued for misrepresentation.

Shindler claimed that in the fall of 1981 he requested several changes in his policies and that the company acknowledged receipt of those changes. He asserted that such an acknowledgement remained a representation by the company that his policies were in force, although the policies had been canceled some months before. Over a year later, the insurance company sent Shindler an analysis of his coverage which included the two life insurance policies. This, too, he claims, was a misrepresentation by the company that he had insurance.

The second document and resultant allegation are similar to those in the case at bar. However, the *Shindler* Court held that although these two actions by the insurance company may seem a bit misleading, the evidence showed that the policies terminated by their own terms long before any such representations were made. *Shindler,* 768 S.W.2d at 334. The court stated that as a matter of law Shindler was charged with knowledge that the annual premiums had to be paid to avoid cancellation of the policies. *Id.*

Although the *Shindler* case was a summary judgment case while the one at bar was a jury trial, the holding in the former is dispositive. Ramirez, too, entered into a policy with Mid Century which required the payment of premiums to maintain the policy in force. After her policy was canceled, she received a questionnaire regarding that policy. The jury found that Ramirez failed to pay her premiums. Mid Century canceled the policy and, pursuant to the "Other Termination Provisions" section of the policy, "proof of mailing of any notice shall be sufficient proof of notice." The jury found that Mid Century did in fact *mail* notice of cancellation to Ramirez. Following the *Shindler* analysis, upon non-payment of the premiums, Ramirez was charged with knowledge that her policy was canceled. Because she was deemed to have full knowledge that her policy terminated due to non-payment of premiums, she could not charge Mid Century with subsequent misrepresentation when the company sent her a policy questionnaire.

We sustain appellant's point of error. Due to our disposition on that point, it is unnecessary to discuss appellant's remaining points of error. *See* Tex.R.App.P. 90(a). We reverse and render the case. The judgment of the trial court is REVERSED.

GILBERTO HINOJOSA, J., not participating.