Robin BROUSSARD, Appellant,

v.

SAN JUAN PRODUCTS, INC. and American Environmental Container Corporation, Appellees.

No. 09–08–082 CV.

Court of Appeals of Texas, Beaumont.

Submitted on Oct. 9, 2008.

Opinion Delivered Dec. 4, 2008.

---

Hubert Oxford IV, Joshua C. Heinz, Benckenstein & Oxford, LLP, B. Adam Terrell, Weller, Green, Toups & Terrell, LLP, Beaumont, Vincent L. Marable, III, Paul Webb, P.C., Wharton, for Appellant.

Eric Paul Edwardson, Rocky Lawdermilk, Beaumont, for Appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

McKEITHEN, Chief Justice.

This appeal concerns whether a manufacturer may be held liable as principal when an authorized dealer for the manufacturer's product sells another company's product, using a similar product name, to a consumer. We affirm the summary judgment granted to the defendants by the trial court.

Robin Broussard purchased what she believed was a San Juan Capistrano fiberglass swimming pool from Hamilton Pools, Inc. Defects appeared after installation, and Broussard determined that the product she purchased was a "knock-off" manufactured by San Juan Pools of Texas, Inc. Broussard initially sued Howard S. "Buddy" Hamilton, Stacy Jo Hamilton–Long, Hamilton Pools, Inc. d/b/a San Juan Pools of Beaumont, and San Juan Pools of Texas, Inc., the alleged sellers and manufacturer of the defective pool, for deceptive trade practices, fraud, breach of warranty, and breach of contract. Broussard amended her petition, adding as defendants the manufacturer of genuine San Juan Capistrano swimming pools, American Environmental Container Corporation ("AECC"), and its licensor, San Juan Products, Inc. ("SJP"). Broussard alleges that Hamilton Pools and Buddy Hamilton as agents of AECC, breached the contract and warranty and engaged in deceptive trade practices and fraud. The trial court granted the traditional and no-evidence motions for summary judgment filed by SJP and AECC and severed those claims into the separate suit from which Broussard appeals.

Broussard contends she presented legally sufficient summary judgment evidence that the appellees gave Hamilton Pools the authority to transact business on behalf of the appellees and that she presented legally sufficient evidence to raise a fact issue on all of the elements necessary to establish apparent authority so as to hold the appellees vicariously liable for the conduct of Hamilton Pools and Buddy Hamilton. *See* Tex.R. Civ. P. 166a(c), 166a(i).

To succeed in a motion for summary judgment under Rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Under Rule 166a(i), a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Unless the respondent produces summary judgment evidence raising a genuine issue of material fact, the court must grant the motion. Tex.R. Civ. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if

any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989). *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005).

■ Broussard argues that when an innocent third party suffers a loss from misconduct of an agent acting within the scope of his apparent authority, the principal is responsible. *See W.C. Biggers & Co. v. First Nat'l Bank,* 29 S.W.2d 841, 842 (Tex. Civ.App.-Texarkana 1930, writ dism'd w.o.j.). While true, a dealer is not *per se* an agent of the manufacturer and the terms of the dealership agreement determine the nature of the relationship. *Gabaldon v. Gen. Motors Corp.,* 876 S.W.2d 367, 369 (Tex.App.-El Paso 1993, no writ). The appellees argue there is no summary judgment evidence that they authorized Buddy Hamilton and/or Hamilton Pools to transact business on behalf of SJP or AECC. The 1994 dealer agreement between Hamilton Pools and AECC states that Hamilton Pools is an independent company engaged in the retail sales of pools, that AECC's relationship to Hamilton Pools shall be that of independent supplier, and expressly disclaims that Hamilton Pools would be an agent or employee of AECC. The agreement provides the terms and conditions under which Hamilton Pools could obtain AECC's products but does not give Hamilton Pools the authority to enter into contracts on behalf of AECC or SJP.

■ Broussard contends that the apparent agency doctrine applies here. Apparent agency arises solely from conduct of the principal communicated to a third party. *Gaines v. Kelly,* 235 S.W.3d 179, 182 (Tex.2007). The alleged principal must either knowingly permit the purported agent to hold himself out as having authority, or the alleged principal must exercise such lack of ordinary care as to clothe the purported agent with indicia of authority, leading a reasonably prudent person to believe the agent has authority to bind the principal. *Id.* "Because an agent's authority is presumed to be co-extensive with the business entrusted to his care, it includes only those contracts and acts incidental to the management of the particular business with which he is entrusted." *Id.* at 185. The relevant issue is not merely the existence of an agency relationship, but also the scope of that agency. *Id.* at 184. We may consider only the principal's conduct leading a third party to believe that the agent has authority. *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 953 (Tex.1996). We must look beyond permission given to sell its products, which is in itself insufficient to bestow apparent authority for other purposes. *See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 672 (Tex.1998). The dealer agreement in this case allowed Hamilton Pools to use the trade names "San Juan" only in connection with the sale of pools supplied by AECC. AECC did not grant Hamilton Pools the right to use the name "San Juan" in the dealer's trade name. The issue, then, is whether some other conduct on the part of AECC and SJP clothed Hamilton Pools or Buddy Hamilton with the authority to transact business for AECC and SJP.

The appellees argue there is no summary judgment evidence that they vested Buddy Hamilton or Hamilton Pools with the apparent authority to act in their behalf. Broussard had no contact with AECC or SJP prior to the sale and there is no summary judgment evidence that Buddy Hamilton or Hamilton Pools ever represented to Broussard that either Hamilton or his company were representatives of SJP or AECC or claimed that they were acting on behalf of SJP or AECC. What Buddy Hamilton and Hamilton Pools

allegedly represented to Broussard was only that Hamilton Pools was selling Broussard a San Juan pool. In other words, Broussard thought Hamilton was selling her a San Juan pool, but did not believe that San Juan was selling her a pool directly.

Broussard contends the appellees had knowledge that Hamilton Pools and Buddy Hamilton were selling non-AECC manufactured pools as pools manufactured by the appellees, but did not terminate the dealer agreement and failed to take action against Hamilton Pools and Buddy Hamilton. She also contends the summary judgment evidence shows the appellees provided sales and promotional material to Hamilton Pools. She argues that the appellees' lack of action created an apparent agency relationship whereby the appellees are vicariously liable for the acts of Hamilton Pools and Buddy Hamilton.

■ "[T]he principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel." *Gaines*, 235 S.W.3d at 182. The summary judgment evidence regarding the appellees' knowledge that Hamilton Pools and Buddy Hamilton were selling "knock-offs" comes from two sources: Henry Eads and Kyle Mehl. Henry Eads bought a pool from Hamilton Pools in 1995. Buddy Hamilton told Eads it was a San Juan pool. When defects appeared in the product, Eads looked up "sanjuanpools.com" on the internet and obtained the company's telephone number. Eads called San Juan, and the woman who spoke to Eads told him he would need to talk to his dealer about his problem with his pool. After 50 to 60 calls to San Juan, all of which were conversations with women, one of the women told Eads to check for a serial number. There was no serial number on the pool and that is when Eads determined he did not have a San Juan pool. Eads

stated that he called the woman back and asked her if the number could have been cut out, and she told Eads it could not and that he did not have a "San Juan" pool. Asked if he "basically just stop[ped] calling San Juan" at that point, Eads replied, "Right. They can't do me nothing without a number." There is no evidence that Eads communicated to the appellees that Hamilton Pools or Buddy Hamilton had falsely represented to Eads that the pool had been manufactured by the appellees.

Hamilton installed a pool for Kyle Mehl in 1999. Mehl started having problems with his pool in 2002. Mehl called Kirk Sullivan, the company's president. Mehl told Sullivan that he bought a pool from Buddy Hamilton in Beaumont and that the pool was blistering. Sullivan told him where to check for the serial number. There was no serial number on the pool and Sullivan told Mehl it was not one of his pools. Sullivan told Mehl that "he thought that these pools were coming out of Dallas, John Blanton was building them, and he no longer worked for their company, that they were black market pools and he had nothing to do with Buddy Hamilton." In a later conversation, the company's attorney told Mehl that "the folks out of Florida were not affiliated or related to the people who sold you and built your pool. . . ." The conversation between Mehl and Sullivan occurred in 2002, two years after Broussard purchased a pool from Hamilton Pools. Because this conversation occurred after the date on which Broussard purchased her pool from Hamilton Pools, the knowledge AECC gained from the conversation is no evidence of the appellees' knowledge in 2000. In his deposition, Kirk Sullivan claimed he learned Buddy Hamilton was selling "fake" pools when he was served with Broussard's lawsuit.

The appellees argue that use of a manufacturer's logo in a dealer's promotional

material does not create apparent authority for the dealer to act for the manufacturer. *See Coffey v. Fort Wayne Pools, Inc.,* 24 F.Supp.2d 671, 679 (N.D.Tex.1998). Furthermore, notwithstanding the appearance of the appellees' logo on written materials provided to Broussard, none of the summary judgment evidence in this case identifies the appellees as the suppliers of the written material Hamilton Pools gave to Broussard when she bought her pool in March 2000. In deciding to make her purchase, Broussard relied on a warranty brochure given to her by Buddy Hamilton. In deposition, Buddy Hamilton testified that he assumed the Florida manufacturing facility was somewhat related to San Juan Pools of Texas and he did not ask the individuals in Florida what their relationship was with John Blanton. Hamilton stated he has used the same brochure since 1974 and he acquired them from Blanton.[1] In answer to Broussard's interrogatories to SJP, Kirk Sullivan stated that Blanton was president of San Juan Fiberglass Pools, Inc. until it ceased to exist in 1989.[2] Hamilton Pools was an authorized dealer for AECC in 1994, but the marketing material provided to Broussard was distributed by the pool's manufacturer, San Juan Pools of Texas, Inc., not AECC or SJP.

Broussard argues that the Supreme Court applies a "more liberal standard" for apparent agency for DTPA causes of action than that which applies to claims at common law. The case on which she relies

held that lack of actual authority is not a defense to a DTPA cause of action if the defendant's agent is acting within the scope of his apparent authority. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 694 (Tex.1979). *Royal Globe* did not concern a fact issue of agency; rather, the case involved whether an insurance company could be held liable for misrepresentations made within the local recording agent's apparent authority. *See Id.* at 693–94. The court held the DTPA did not require actual authority to make misrepresentations in order to impose liability on the principal. *Id.* at 694. More recently, the Supreme Court applied the standard for apparent authority set forth in *NationsBank* to DTPA claims. *See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d at 672–73 (citing *NationsBank,* 922 S.W.2d at 952–53). Broussard argues the Supreme Court adopted a federal Ninth Circuit case by citing the case as authority in *Royal Globe. See Royal Globe,* 577 S.W.2d at 694 (citing *Goodman v. F.T.C.,* 244 F.2d 584, 591–93 (9th Cir.1957)). *Royal Globe* cited *Goodman* as supporting authority for its holding that lack of actual authority is not a defense in a DTPA case. *Id.* The Supreme Court did not adopt a Ninth Circuit test for determining apparent authority. *Id.*

Broussard also argues that AECC and SJP are vicariously liable for the conduct of Hamilton Pools and Buddy Hamilton because AECC and SJP failed to

---

1. A brochure in the summary judgment record states that "[t]he first San Juan Pool was installed in 1958" and the company has "Over a Quarter Century Nationwide Service."

2. In deposition, Sullivan stated that AECC has existed since 1990 and he has worked at AECC since January 1993. A fire had destroyed records and Sullivan did not know if Hamilton was cancelled as a dealer or merely

made inactive because he never purchased a pool from AECC. Sullivan had no evidence that the dealer contract had been cancelled. To Sullivan's knowledge, Hamilton Pools never bought a pool from AECC. In his deposition, Sullivan admitted people sometimes called asking if a pool had been manufactured by his company. Sullivan stated there are approximately 28 manufacturers of pools in the United States.

repudiate the transaction and therefore ratified it. "Ratification is the affirmance by a person of a prior act which when performed did not bind him, but which was professedly done on his account, whereby the act is given effect as if originally authorized by him." *Disney Enters., Inc. v. Esprit Fin., Inc.,* 981 S.W.2d 25, 31 (Tex. App.-San Antonio 1998, pet. dism'd w.o.j.). "Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980). Broussard's petition alleges the pool she purchased did not come from AECC or SJP. The only summary judgment evidence in the record is that AECC and SJP neither provided the product involved in the transaction nor accepted any benefit from the transaction. Because there is no evidence that AECC or SJP accepted the benefits of Hamilton Pools's transaction with Broussard, as a matter of law, implied ratification does not apply. *See generally St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 536–37 (Tex.2002).

Broussard alleges that AECC and SJP are vicariously liable for the deceptive and fraudulent acts of Buddy Hamilton and Hamilton Pools but she does not allege that AECC or SJP committed a deceptive trade practice or fraud other than through Buddy Hamilton and Hamilton Pools as the alleged agents of AECC and SJP. We hold the trial court did not err in granting summary judgment on the grounds that AECC and SJP are not vicariously liable. Accordingly, the judgment is affirmed.

AFFIRMED.