In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-082 CV


____________________



ROBIN BROUSSARD, Appellant



V.



SAN JUAN PRODUCTS, INC. AND AMERICAN ENVIRONMENTAL


CONTAINER CORPORATION, Appellees


 




On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-176,089-A 






OPINION



 This appeal concerns whether a manufacturer may be held liable as principal when an 
authorized dealer for the manufacturer's product sells another company's product, using a
similar product name, to a consumer. We affirm the summary judgment granted to the
defendants by the trial court.

 Robin Broussard purchased what she believed was a San Juan Capistrano fiberglass
swimming pool from Hamilton Pools, Inc. Defects appeared after installation, and Broussard
determined that the product she purchased was a "knock-off" manufactured by San Juan
Pools of Texas, Inc. Broussard initially sued Howard S. "Buddy" Hamilton, Stacy Jo
Hamilton-Long, Hamilton Pools, Inc. d/b/a San Juan Pools of Beaumont, and San Juan Pools
of Texas, Inc., the alleged sellers and manufacturer of the defective pool, for deceptive trade
practices, fraud, breach of warranty, and breach of contract. Broussard amended her petition,
adding as defendants the manufacturer of genuine San Juan Capistrano swimming pools,
American Environmental Container Corporation ("AECC"), and its licensor, San Juan
Products, Inc. ("SJP"). Broussard alleges that Hamilton Pools and Buddy Hamilton as agents
of AECC, breached the contract and warranty and engaged in deceptive trade practices and
fraud. The trial court granted the traditional and no-evidence motions for summary judgment
filed by SJP and AECC and severed those claims into the separate suit from which Broussard
appeals.

 Broussard contends she presented legally sufficient summary judgment evidence that
the appellees gave Hamilton Pools the authority to transact business on behalf of the
appellees and that she presented legally sufficient evidence to raise a fact issue on all of the
elements necessary to establish apparent authority so as to hold the appellees vicariously
liable for the conduct of Hamilton Pools and Buddy Hamilton. See Tex. R. Civ. P. 166a(c),
166a(i).

 To succeed in a motion for summary judgment under Rule 166a(c), a
movant must establish that there is no genuine issue of material fact so that the
movant is entitled to judgment as a matter of law. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991). In reviewing a summary judgment, we
consider the evidence in the light most favorable to the non-movant and
resolve any doubt in the non-movant's favor. Nixon v. Mr. Property Mgmt.
Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Under Rule 166a(i), a party may
move for summary judgment on the ground that there is no evidence of one or
more essential elements of a claim or defense on which an adverse party would
have the burden of proof at trial. Unless the respondent produces summary
judgment evidence raising a genuine issue of material fact, the court must
grant the motion. Tex. R. Civ. P. 166a(i); Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 207 (Tex. 2002). Because the trial court's order granting
summary judgment does not specify the basis for the ruling, we must affirm
the trial court's judgment if any of the theories advanced are meritorious. 
Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989).


W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).


 Broussard argues that when an innocent third party suffers a loss from misconduct of
an agent acting within the scope of his apparent authority, the principal is responsible. See
W.C. Biggers & Co. v. First Nat'l Bank, 29 S.W.2d 841, 842 (Tex. Civ. App.--Texarkana
1930, writ dism'd w.o.j.). While true, a dealer is not per se an agent of the manufacturer and
the terms of the dealership agreement determine the nature of the relationship. Gabaldon v.
Gen. Motors Corp., 876 S.W.2d 367, 369 (Tex. App.--El Paso 1993, no writ). The appellees
argue there is no summary judgment evidence that they authorized Buddy Hamilton and/or
Hamilton Pools to transact business on behalf of SJP or AECC. The 1994 dealer agreement
between Hamilton Pools and AECC states that Hamilton Pools is an independent company
engaged in the retail sales of pools, that AECC's relationship to Hamilton Pools shall be that
of independent supplier, and expressly disclaims that Hamilton Pools would be an agent or
employee of AECC. The agreement provides the terms and conditions under which
Hamilton Pools could obtain AECC's products but does not give Hamilton Pools the
authority to enter into contracts on behalf of AECC or SJP.

 Broussard contends that the apparent agency doctrine applies here. Apparent agency
arises solely from conduct of the principal communicated to a third party. Gaines v. Kelly,
235 S.W.3d 179, 182 (Tex. 2007). The alleged principal must either knowingly permit the
purported agent to hold himself out as having authority, or the alleged principal must exercise
such lack of ordinary care as to clothe the purported agent with indicia of authority, leading
a reasonably prudent person to believe the agent has authority to bind the principal. Id. 
"Because an agent's authority is presumed to be co-extensive with the business entrusted to
his care, it includes only those contracts and acts incidental to the management of the
particular business with which he is entrusted." Id. at 185. The relevant issue is not merely
the existence of an agency relationship, but also the scope of that agency. Id. at 184. We
may consider only the principal's conduct leading a third party to believe that the agent has
authority. NationsBank, N.A. v. Dilling, 922 S.W.2d 950, 953 (Tex. 1996). We must look
beyond permission given to sell its products, which is in itself insufficient to bestow apparent
authority for other purposes. See Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 672 (Tex.
1998). The dealer agreement in this case allowed Hamilton Pools to use the trade names
"San Juan" only in connection with the sale of pools supplied by AECC. AECC did not grant
Hamilton Pools the right to use the name "San Juan" in the dealer's trade name. The issue,
then, is whether some other conduct on the part of AECC and SJP clothed Hamilton Pools
or Buddy Hamilton with the authority to transact business for AECC and SJP.

 The appellees argue there is no summary judgment evidence that they vested Buddy
Hamilton or Hamilton Pools with the apparent authority to act in their behalf. Broussard had
no contact with AECC or SJP prior to the sale and there is no summary judgment evidence
that Buddy Hamilton or Hamilton Pools ever represented to Broussard that either Hamilton
or his company were representatives of SJP or AECC or claimed that they were acting on
behalf of SJP or AECC. What Buddy Hamilton and Hamilton Pools allegedly represented
to Broussard was only that Hamilton Pools was selling Broussard a San Juan pool. In other
words, Broussard thought Hamilton was selling her a San Juan pool, but did not believe that
San Juan was selling her a pool directly.

 Broussard contends the appellees had knowledge that Hamilton Pools and Buddy
Hamilton were selling non-AECC manufactured pools as pools manufactured by the
appellees, but did not terminate the dealer agreement and failed to take action against
Hamilton Pools and Buddy Hamilton. She also contends the summary judgment evidence
shows the appellees provided sales and promotional material to Hamilton Pools. She argues
that the appellees' lack of action created an apparent agency relationship whereby the
appellees are vicariously liable for the acts of Hamilton Pools and Buddy Hamilton.

 "[T]he principal's full knowledge of all material facts is essential to establish a claim
of apparent authority based on estoppel." Gaines, 235 S.W.3d at 182. The summary
judgment evidence regarding the appellees' knowledge that Hamilton Pools and Buddy
Hamilton were selling "knock-offs" comes from two sources: Henry Eads and Kyle Mehl. 
Henry Eads bought a pool from Hamilton Pools in 1995. Buddy Hamilton told Eads it was
a San Juan pool. When defects appeared in the product, Eads looked up "sanjuanpools.com"
on the internet and obtained the company's telephone number. Eads called San Juan, and the
woman who spoke to Eads told him he would need to talk to his dealer about his problem
with his pool. After 50 to 60 calls to San Juan, all of which were conversations with women, 
one of the women told Eads to check for a serial number. There was no serial number on the
pool and that is when Eads determined he did not have a San Juan pool. Eads stated that he
called the woman back and asked her if the number could have been cut out, and she told
Eads it could not and that he did not have a "San Juan" pool. Asked if he "basically just
stop[ped] calling San Juan" at that point, Eads replied, "Right. They can't do me nothing
without a number." There is no evidence that Eads communicated to the appellees that
Hamilton Pools or Buddy Hamilton had falsely represented to Eads that the pool had been
manufactured by the appellees.

 Hamilton installed a pool for Kyle Mehl in 1999. Mehl started having problems with
his pool in 2002. Mehl called Kirk Sullivan, the company's president. Mehl told Sullivan
that he bought a pool from Buddy Hamilton in Beaumont and that the pool was blistering. 
Sullivan told him where to check for the serial number. There was no serial number on the
pool and Sullivan told Mehl it was not one of his pools. Sullivan told Mehl that "he thought
that these pools were coming out of Dallas, John Blanton was building them, and he no
longer worked for their company, that they were black market pools and he had nothing to
do with Buddy Hamilton." In a later conversation, the company's attorney told Mehl that
"the folks out of Florida were not affiliated or related to the people who sold you and built
your pool. . . ." The conversation between Mehl and Sullivan occurred in 2002, two years
after Broussard purchased a pool from Hamilton Pools. Because this conversation occurred
after the date on which Broussard purchased her pool from Hamilton Pools, the knowledge
AECC gained from the conversation is no evidence of the appellees' knowledge in 2000. 
In his deposition, Kirk Sullivan claimed he learned Buddy Hamilton was selling "fake" pools
when he was served with Broussard's lawsuit.

 The appellees argue that use of a manufacturer's logo in a dealer's promotional
material does not create apparent authority for the dealer to act for the manufacturer. See
Coffey v. Fort Wayne Pools, Inc., 24 F.Supp.2d 671, 679 (N.D. Tex. 1998). Furthermore,
notwithstanding the appearance of the appellees' logo on written materials provided to
Broussard, none of the summary judgment evidence in this case identifies the appellees as
the suppliers of the written material Hamilton Pools gave to Broussard when she bought her
pool in March 2000. In deciding to make her purchase, Broussard relied on a warranty
brochure given to her by Buddy Hamilton. In deposition, Buddy Hamilton testified that he
assumed the Florida manufacturing facility was somewhat related to San Juan Pools of Texas
and he did not ask the individuals in Florida what their relationship was with John Blanton. 
Hamilton stated he has used the same brochure since 1974 and he acquired them from
Blanton. (1) In answer to Broussard's interrogatories to SJP, Kirk Sullivan stated that Blanton
was president of San Juan Fiberglass Pools, Inc. until it ceased to exist in 1989. (2) Hamilton
Pools was an authorized dealer for AECC in 1994, but the marketing material provided to
Broussard was distributed by the pool's manufacturer, San Juan Pools of Texas, Inc., not
AECC or SJP.

 Broussard argues that the Supreme Court applies a "more liberal standard" for
apparent agency for DTPA causes of action than that which applies to claims at common law. 
The case on which she relies held that lack of actual authority is not a defense to a DTPA
cause of action if the defendant's agent is acting within the scope of his apparent authority. 
See Royal Globe Ins. Co. v. Bar Consultants, Inc., 577 S.W.2d 688, 694 (Tex. 1979). Royal
Globe did not concern a fact issue of agency; rather, the case involved whether an insurance
company could be held liable for misrepresentations made within the local recording agent's
apparent authority. See Id. at 693-94. The court held the DTPA did not require actual
authority to make misrepresentations in order to impose liability on the principal. Id. at 694. 
More recently, the Supreme Court applied the standard for apparent authority set forth in
NationsBank to DTPA claims. See Ins. Co. of N. Am. v. Morris, 981 S.W.2d at 672-73
(citing NationsBank, 922 S.W.2d at 952-53). Broussard argues the Supreme Court adopted
a federal Ninth Circuit case by citing the case as authority in Royal Globe. See Royal Globe,
577 S.W.2d at 694 (citing Goodman v. F.T.C., 244 F.2d 584, 591-93 (9th Cir. 1957)). Royal
Globe cited Goodman as supporting authority for its holding that lack of actual authority is
not a defense in a DTPA case. Id. The Supreme Court did not adopt a Ninth Circuit test for
determining apparent authority. Id.

 Broussard also argues that AECC and SJP are vicariously liable for the conduct of
Hamilton Pools and Buddy Hamilton because AECC and SJP failed to repudiate the
transaction and therefore ratified it. "Ratification is the affirmance by a person of a prior act
which when performed did not bind him, but which was professedly done on his account,
whereby the act is given effect as if originally authorized by him." Disney Enters., Inc. v.
Esprit Fin., Inc., 981 S.W.2d 25, 31 (Tex. App.--San Antonio 1998, pet. dism'd w.o.j.). 
"Ratification may occur when a principal, though he had no knowledge originally of the
unauthorized act of his agent, retains the benefits of the transaction after acquiring full
knowledge." Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex.
1980). Broussard's petition alleges the pool she purchased did not come from AECC or SJP. 
 The only summary judgment evidence in the record is that AECC and SJP neither provided
the product involved in the transaction nor accepted any benefit from the transaction. 
Because there is no evidence that AECC or SJP accepted the benefits of Hamilton Pools's
transaction with Broussard, as a matter of law, implied ratification does not apply. See
generally St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 536-37 (Tex. 2002).

 Broussard alleges that AECC and SJP are vicariously liable for the deceptive and
fraudulent acts of Buddy Hamilton and Hamilton Pools but she does not allege that AECC
or SJP committed a deceptive trade practice or fraud other than through Buddy Hamilton and
Hamilton Pools as the alleged agents of AECC and SJP. We hold the trial court did not err
in granting summary judgment on the grounds that AECC and SJP are not vicariously liable. 
Accordingly, the judgment is affirmed.

 AFFIRMED.

 _____________________________

 STEVE McKEITHEN

 Chief Justice

Submitted on October 9, 2008

Opinion Delivered December 4, 2008

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. A brochure in the summary judgment record states that "[t]he first San Juan Pool was
installed in 1958" and the company has "Over a Quarter Century Nationwide Service."
2. In deposition, Sullivan stated that AECC has existed since 1990 and he has worked
at AECC since January 1993. A fire had destroyed records and Sullivan did not know if
Hamilton was cancelled as a dealer or merely made inactive because he never purchased a
pool from AECC. Sullivan had no evidence that the dealer contract had been cancelled. To
Sullivan's knowledge, Hamilton Pools never bought a pool from AECC. In his deposition,
Sullivan admitted people sometimes called asking if a pool had been manufactured by his
company. Sullivan stated there are approximately 28 manufacturers of pools in the United
States.