Stan STUMPH, d/b/a Concrete Concepts/Dallas Fire Insurance Company, Appellants,

v.

DALLAS FIRE INSURANCE COMPANY/Stan Stumph, d/b/a Concrete Concepts, Appellees.

No. 03–99–00606–CV.

Court of Appeals of Texas, Austin.

Dec. 21, 2000.

Jeffrey D. Talmadge, Law Offices of Jeffrey D. Talmadge, Austin, for Stan Stumph.

Debora B. Alsup, Thompson & Knight L.L.P., Austin, for Dallas Fire.

Before Justices JONES, KIDD and YEAKEL.

YEAKEL, Justice.

This appeal arises from a dispute between Stan Stumph, doing business as Concrete Concepts, ("Stumph") and Dallas Fire Insurance Company ("Dallas Fire") over insurance coverage. Stumph initiated this litigation by filing suit in district court seeking damages resulting from Dallas Fire's refusal to defend and indemnify Stumph in a previous suit filed against him. A jury found in Stumph's favor and awarded him damages. Stumph appeals the district court's denial of his motion for judgment on the verdict seeking treble damages. Dallas Fire appeals the award of actual damages. We will modify the district-court judgment to award Stumph two times his actual damages in addition to the actual damages awarded by the district court [1] and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Stumph is the sole proprietor of Concrete Concepts. In late 1992, Stumph purchased a commercial general-liability insurance policy from Dallas Fire (the "first policy"). The first policy was purchased

---

[1]. The statute on which Stumph relies provides for an award, in addition to actual damages, of "two times the amount of actual damages" if the jury finds a knowing violation of the insurance code. *See* Act of April 5, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex. Gen.Laws 395, 395 (Tex.Ins.Code.Ann. art. 21.21 § 16, since amended). When we refer to "trebling" actual damages, we are referring to the same damages as the statute provides.

through Dallas Fire's local recording agent, Don Harvey ("Harvey").[2] Harvey owned Emerald Insurance, an independent agency which marketed general-liability, automobile, and workers-compensation insurance for several insurance companies. In 1991, Harvey and Dallas Fire entered into an agency agreement naming Harvey a local recording agent for Dallas Fire. However, by the terms of the agency agreement, Harvey had no authority to bind Dallas Fire to any insurance risks.

The policy was to be in effect from November 17, 1992 through November 17, 1993 and specifically excluded coverage for any liability stemming from "completed operations." Stumph made a down payment on the policy's premium and financed the remainder through a premium finance company, to whom he sent monthly payments. The premium finance company forwarded the payments to Harvey. Harvey was to send the payments, minus a commission, to Dallas Fire. Dallas Fire did not receive Stumph's payments and eventually discovered that Harvey had not forwarded payments on other accounts as well. On July 14, 1993, Dallas Fire suspended its agency agreement with Harvey.

Shortly after Harvey's suspension, Dallas Fire sent a cancellation notice to Stumph, stating that his policy would be canceled on July 26, 1993 for "non-pay agent to co." Upon receiving the cancellation notice, Stumph called Harvey. Harvey told Stumph to continue making payments as usual and that this "had to be a paperwork mix-up." Stumph then called Dallas Fire and spoke to Liz Jennings, an "underwriter" at Dallas Fire. Stumph and Jennings disagree on the contents of their

conversation. Stumph claims that Jennings told him that there must have been a "mix-up," Harvey was a "good man," Stumph should continue to make payments to Harvey and should keep his canceled checks, and Jennings would call him if he needed to send the checks to her or if there was a "problem." Jennings claims that she told Stumph to send the canceled checks to her at that time so Dallas Fire could reinstate the policy if the cancellation was in error. The parties agree that Stumph did not send the canceled checks to Dallas Fire and that Dallas Fire never reinstated the policy.

In August Stumph received confirmation from the premium finance company that his premium for the first policy had been paid in full. The confirmation reflects that copies were sent to Dallas Fire and Emerald Insurance, though Dallas Fire claims not to have received a copy.

In November Stumph contacted Harvey about renewing the policy. Several days after their conversation, Harvey delivered to Stumph a policy similar to the first policy (the "renewal policy"). With the renewal policy, however, Stumph made monthly premium payments directly to Harvey and not to the premium finance company. The "renewal policy" given to Stumph by Harvey was a copy of the first policy, with different effective dates and a different policy number. Unknown to Stumph, the renewal policy was neither issued nor approved by Dallas Fire.

In January 1994 Stumph contracted with Byram Properties ("Byram") to perform concrete repairs to a parking garage.[3] As a

---

**2.** The insurance code defines two types of insurance agents: local recording agents and soliciting agents. Tex.Ins.Code Ann. art. 21.14, § 1 (West Supp.2000). A local recording agent is further classified as: (1) a person "engaged in soliciting and writing insurance," authorized by an insurance company "to solicit business and to write, sign, execute, and deliver" policies, and "to bind companies to insurance risks"; or (2) a person "engaged in soliciting and writing insur-

ance," authorized by an insurance company "to solicit business, and to forward applications for insurance to the home office of the insurance companies" and "who collect [s] premiums on such business and otherwise perform[s] the customary duties of a local recording agent representing an insurance carrier in its relation with the public." *Id.* art. 21.14, § 2(a)(1).

**3.** Byram Properties owned and managed the property, Congress Square No. 1, Ltd., that

result of Stumph's work, several vehicles parked on a floor below the one where Stumph worked were damaged by falling pieces of concrete or white chemical deposits. In September, Byram sued Stumph for breach of contract and violations of the Deceptive Trade Practices Act (the "DTPA"). *See* Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.2000). Stumph requested Dallas Fire to defend and indemnify him in connection with the Byram suit. Dallas Fire declined and informed Stumph that he did not have a valid policy of insurance with Dallas Fire and Harvey was no longer Dallas Fire's agent. Upon inquiry to the Texas Department of Insurance, Stumph learned that there had been 366 fraud complaints filed against Harvey.

Stumph ultimately settled the suit with Byram for $14,500. As a result of defending Byram's suit, Stumph incurred approximately $6,000 in attorney's fees. Stumph then brought this suit in district court against Dallas Fire for breach of contract and violations of the insurance code and the DTPA by virtue of Dallas Fire's refusal to defend and indemnify Stumph in the Byram suit. *See* Tex.Ins.Code Ann. art. 21.21, § 16 (West Supp.2000); Tex.Bus. & Com.Code Ann. § 17.50 (West Supp.2000). The jury returned a verdict for Stumph. Stumph filed a motion for judgment on the verdict that included a request that the district court award him twice the actual damages found by the jury. *See* Tex.Ins. Code Ann. art. 21.21, § 16. Dallas Fire filed a motion for judgment *non obstante veredicto*. *See* Tex.R.Civ.P. 301. The dis-

trict court rendered judgment for Stumph for his actual damages, attorney's fees, and prejudgment interest. By five issues, Dallas Fire appeals, asserting that, as a matter of law, it could not be bound by Harvey's actions, the Byram claim was not covered by the first policy and therefore could not be covered by the renewal policy, and there was insufficient evidence to support the jury's findings against it. Stumph appeals the district court's refusal to treble his actual damages.

## DISCUSSION

### Unfair Insurance Practices

By its first issue, Dallas Fire argues that the renewal policy was not valid as a matter of law.[4] Dallas Fire asserts that it canceled Stumph's first policy, making a renewal impossible, and by law it was not bound by the acts of Harvey. Dallas Fire directs this Court to its agency agreement with Harvey that expressly denied Harvey authority to bind Dallas Fire.[5]

Stumph responds that the district-court judgment is supportable on any one of the following theories: (1) Harvey had actual authority to bind Dallas Fire; (2) Harvey had apparent authority, created by Liz Jennings in her telephone conversation with Stumph, to bind Dallas Fire; (3) Dallas Fire, through Jennings' actions, engaged in unfair insurance practices; or (4) Dallas Fire, through Jennings' actions, violated the DTPA.[6] Because we hold that Dallas Fire's actions alone support the district-court judgment, we need not address

---

was to be repaired by Stumph. We will use "Byram" to refer to both Congress Square and Byram Properties.

4. We will address Dallas Fire's first issue even though Dallas Fire conceded at oral argument that it would have a duty to defend and indemnify Stumph if the first policy provided coverage for the Byram suit. We address coverage under Dallas Fire's second issue.

5. Dallas Fire advances the insurance code's definitions of local recording agent as support for its contention that Harvey was a local

recording agent without authority to bind Dallas Fire to any insurance policy. *See* Tex. Ins.Code Ann. art. 21.14, § 2(a)(1) (West Supp.2000); *supra* note 2.

6. Stumph's last two assertions are closely related. Section 16 of article 21.21 allows recovery under the insurance code upon the finding of a deceptive act or practice as defined by the insurance code or by the DTPA. *See* Tex.Ins.Code Ann. art. 21.21, § 16 (West Supp.2000); Tex.Bus. & Com.Code Ann. § 17.50 (West Supp.2000).

whether Harvey was Dallas Fire's agent. *See* Tex.R.App.P. 47.1.

■ ■ Although Dallas Fire is correct that construction of an insurance policy is a matter of law,[7] an insurer may be responsible for damages to an insured when the insurer has engaged in unfair insurance practices or violated the DTPA, even though no coverage existed under the policy. *See Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96 (Tex.1994); *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex.1979).

In *Celtic Life Insurance Co. v. Coats*, the supreme court held an insurer liable for the misrepresentations of one of its agents that the insured was "covered" for up to one million dollars in psychiatric benefits, when the policy actually covered only $10,000. After Coats's son received psychiatric treatment, Celtic Life paid but $10,000 of the $27,000 claimed. Celtic Life argued that because the agent who had made the misrepresentation did not have actual authority to bind the company, the insurer could not be held liable to the insured. The court determined that the agent did have the requisite authority. *See Coats*, 885 S.W.2d at 99. The jury was asked whether Celtic Life's agent had made any misrepresentations that were a producing cause of damages to Coats. *Id.* The jury answered yes, and Coats recovered the full amount of his son's psychiatric expenses. *Id.* at 100.

In *Royal Globe Insurance Co. v. Bar Consultants, Inc.*, a local recording agent for Royal Globe represented to the insured that coverage was provided for damage caused by vandalism. *Bar Consultants*, 577 S.W.2d at 689. When Royal Globe later denied a vandalism claim on the ground that the claim was not covered under the policy, the insured sued under the DTPA and article 21.21 of the insurance code alleging damages as a result of the preloss misrepresentation. *Id.* at 690. The supreme court held that the actions of the agent amounted to a violation of both statutes, and Bar Consultants recovered the cost of the repairs that Royal Globe represented were covered as damages. *Id.* at 694.

This Court has also held an insurer liable for engaging in unfair insurance practices and awarded damages, even though coverage did not exist under its policy. *See State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908 (Tex.App.—Austin 1991, no writ). The Groses held a homeowner's insurance policy issued by State Farm. *Id.* at 910. A landslide on a nearby hill caused several boulders to be displaced into the Groses' driveway. *Id.* State Farm's agent told the Groses that their policy did not cover removal of the boulders because the boulders were not touching the Groses' house. *Id.* at 911. In the course of explaining that the Groses were not covered, the agent represented that the policy would cover damage to their house caused by rocks from the hillside in the event that damage did occur. *Id.* This representation was inaccurate, however, because the policy did not cover such damage. When several years later a landslide damaged the Groses' house, State Farm denied liability. *Id.* This Court held that State Farm was bound by its agent's statements and was liable for the damage to the Groses' house. *Id.* at 918.

■ ■ Although *Coats, Bar Consultants*, and *Gros* involved misrepresentations about coverage, Jennings's statements to Stumph are similar. Like the insureds in *Coats, Bar Consultants*, and *Gros*, Stumph relied on the representations of the insurance company's agent. Here, Stumph thought, after talking with Jennings, that any "mix-up" had been corrected and that the first policy had never been canceled. Stumph also thought that he had renewed his policy through Harvey, whom Jennings, Dallas Fire's agent, described as a "good man." Jennings gave Stumph no reason to believe he should not

---

7. *See Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963).

continue to deal with Dallas Fire through Harvey.

Dallas Fire stands behind Jennings's statements as "sound business practices." Yet her statements resulted in harm to Stumph. To recover under article 21.21, Stumph need not prove that his "renewal" resulted in Dallas Fire's issuing a valid policy, nor must he prove that Harvey possessed actual or apparent authority to bind Dallas Fire to the renewal. He must only prove that Dallas Fire engaged in an unfair insurance practice that was a producing cause of damage to him. *See* Tex. Ins.Code Ann. art. 21.21 (West 1981 & Supp.2000); *Coats*, 885 S.W.2d at 99; *Bar Consultants*, 577 S.W.2d at 691–93; *Gros*, 818 S.W.2d at 912–14.

▬▬ ▬▬ Dallas Fire further complains that the jury question concerning unfair insurance practices refers to *Dallas Fire* and not *Harvey*.[8] This assertion rests on the presumption that Harvey was the only individual that engaged in unfair insurance practices and ignores the fact that Jennings also violated the insurance code. Dallas Fire can be bound by Jennings, one of its "underwriters." [9] That Jennings was an agent of Dallas Fire has never been disputed. The district court was not required to submit a question concerning Jennings's authority to the jury. Dallas Fire is liable to Stumph for the misrepresentations of its agent, Jennings. *See Gros*, 818 S.W.2d at 912–13. We overrule Dallas Fire's first issue.

### Coverage Under the Renewal Policy

By its second issue, Dallas Fire asserts, and Stumph does not deny, that Stumph's renewal coverage is limited to the coverage he had under the first policy. Coverage under the renewal policy was to be the same as that provided by the first policy. Thus, Stumph's renewal-policy coverage cannot be more extensive than that provided by the first policy. We must determine whether the first policy would have provided coverage for the allegations in the Byram suit.

The first policy included coverage for sums that Stumph might become obligated to pay as a result of "property damage." Dallas Fire also had the "duty to defend any 'suit' seeking those damages." The insurance was limited to "property damage" resulting from an "occurrence." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy did not provide coverage for "products-completed operations hazard[s]." This means that the policy only covered property damage "arising out of" Stumph's "work that ha[d] not yet been completed or abandoned." Work would be deemed completed at the earlier of the completion of the work called for in the job contract or when that part of the work completed at a job site had been put to its intended use "by any person or organization." [10]

### A. Duty to Defend

▬▬ ▬▬▬▬▬ The duty to defend is broader than the duty to indemnify. *Texas Prop. & Cas. Ins. Guar. Ass'n v. Southwest Aggregates, Inc.*, 982 S.W.2d 600, 606 (Tex.App.—Austin 1998, no pet.). Once coverage has been found for any portion of a suit, an insurer must defend the entire suit. *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex.App.—Austin 1999, pet. denied). An insurer's duty to defend is determined by the allegations in the pleadings and the language of

---

**8.** The district court submitted the following question to the jury: "Did Dallas Fire Insurance Company engage in any false, misleading, or deceptive act or practice that was a producing cause of damages to Stan Stumph?" Dallas Fire did not object to the question.

**9.** Jennings testified that as an "underwriter," her duties required that she "review applications, [and] make sure that they are acceptable according to company guidelines."

**10.** There is a third timing event included in the policy, but it is inapplicable to this case.

the insurance policy; this test is referred to as the "eight corners" rule. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). Pursuant to the rule, we consider only the allegations in the underlying complaint and the terms of the insurance policy to determine whether a duty to defend exists, giving the allegations in the petition a liberal interpretation and resolving any doubt in favor of the insured. *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex.App.—Austin 1999, no pet.). If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend the suit against its insured. *Merchants Fast Motor Lines*, 939 S.W.2d at 141.

■ ■ The underlying suit was filed by Byram, the owner of the repaired garage. The suit included Byram's claim that Stumph had violated the DTPA, breached their contract, and breached warranties made in connection with Stumph's concrete repair work. Byram's petition alleged that "subsequent to the completion of the work performed, [Byram] was informed by a building tenant that cement from the repaired area had fallen on her vehicle. Moreover, [Byram] has received, and continues to receive, numerous complaints that concrete sediments from the repaired area has dripped, and continues to drip, onto their vehicles resulting in the damaging of the paint on the vehicles." A liberal reading of this allegation does not preclude it from coverage under the first policy. The language of this allegation does not establish that the vehicles were damaged after completion of the job simply because the complaints were received after Byram believed the job to be complete.

Although the petition does not include the word "accident," it does not preclude the possibility that an accident caused the damage to the vehicles. Byram alleges that Stumph "made certain representations to [Byram] about the characteristics and quality of the repairs and materials used including, but not limited to the representation that the work was to be completed in a substantial and workmanlike manner." Giving this pleading a liberal reading in favor of the insured, it does not exclude the possibility that Stumph's failure to satisfy Byram was caused by an accident. The inclusion of a DTPA claim and the allegation that Stumph acted knowingly would not preclude Byram from ultimately prevailing in this underlying suit if Stumph's breach of contract and warranties resulted from an "accident" within the meaning assigned to it by Dallas Fire in the insurance policy. It is unlikely that a plaintiff alleging knowing violations of the DTPA would characterize the actions of the party being sued as "accidental."

Given a liberal interpretation, these allegations suggest that Byram's damages resulted from an occurrence covered by the first policy; therefore, Dallas Fire had a duty to defend Stumph.

B. *Duty to Indemnify*

Dallas Fire asserts two bases for its contention that it did not have to indemnify Stumph. First, the damage to the vehicles from falling debris was not an "accident" because Stumph "clearly anticipated and expected" concrete to fall while he was working on an upper level. Second, the damage from white chemical sediments occurred after Stumph completed the work at the garage for Byram. We are unpersuaded by either of these arguments.

■ ■ The duty to defend and the duty to indemnify by an insurer are distinct and separate duties. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex.1997). The construction of an insurance policy is a question of law for the court to determine. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). Insurance policies are to be strictly construed in favor of the insured in order to avoid exclusion of coverage. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

Of the two types of damages stemming from the Byram job, the record reflects that the falling concrete clearly occurred in the course of Stumph's work on one level of the garage. The pieces of concrete fell from the ceiling of one level of the garage and were dislodged *at the time* Stumph operated machinery above that level. In addition, this damage can be characterized as an accident. In determining whether an event is an accident, we consider both the actor's intent and the reasonably foreseeable effect of his conduct. *See Mid–Century Ins. Co. v. Lindsey,* 997 S.W.2d 153, 155 (Tex.1999). Stumph did not testify that he intended to cause the concrete to fall. Stumph testified that he was aware of the possibility of falling debris. Dallas Fire cannot rely on the mere existence of a result which was in the realm of possibilities to prove that falling concrete was a reasonably foreseeable. *See generally Lindsey,* 997 S.W.2d at 155–56; *Cowan,* 945 S.W.2d at 827–28.

Likewise, there is no evidence that anyone anticipated or could have anticipated that the chemicals would drip through to the level below. This accident also occurred before Stumph's work was completed. According to the first policy, a job is complete when the first of two events occurs—all the work called for in the job contract has been completed or the part of the work done at a job site has been put to its intended use by any person. There is evidence that, at the time of the chemical leak, Stumph still had to return to the job site and finish washing, striping, and sealing the concrete. In addition, Stumph's own car was damaged by the deposits. This is some evidence that Stumph had not completed *all* the work anticipated in the contract and that he had not abandoned the Byram job when the property damage occurred. The record also fails to reflect any evidence that the area worked on by Stumph was being used by anyone other than Stumph. Indeed, all of the damage occurred when the vehicles were parked below the area worked on by Stumph. We hold that Dallas Fire had a duty to indemnify Stumph for the damage to the vehicles in the Byram garage.

Having held coverage would have existed under the first policy, we overrule Dallas Fire's second issue.

### Sufficiency of the Evidence

Dallas Fire, by its next three issues, asserts that the evidence adduced at trial is legally and factually insufficient to support the jury verdict. Dallas Fire contends that the evidence in the record is factually insufficient to support the finding of an insurance code violation and that the evidence is legally and factually insufficient to prove that Dallas Fire acted unconscionably or to support the actual damages awarded Stumph.

A. *DTPA and Insurance Code Violations*

By its third issue, Dallas Fire contends that "there is factually insufficient evidence, and the jury's DTPA finding is against the great weight of the evidence, that Dallas Fire committed a deceptive act or practice by making any untrue statements to [Stumph] or failing to state material facts or misleading [Stumph]."

When challenging the factual sufficiency of the evidence supporting an adverse finding upon which it did not carry the burden of proof, an appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ). We will consider and weigh all the evidence in support of and contrary to the finding. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). The contested findings will be upheld unless we find that (1) the evidence is too weak to support the finding, or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We will not substitute our judgment for that of the trier of fact merely because we

reach a different fact conclusion. *Westech Eng'g,* 835 S.W.2d at 196.

In the district court, the jury was asked whether Dallas Fire had committed a DTPA violation in making any misrepresentation relating to the insurance policy by:

a. Failing to state a material fact that is necessary to make other statements not misleading, considering the circumstances under which the statements are made; or

b. Making any untrue statement of material fact; or

c. Making any statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact.

The jury answered in the affirmative when asked whether the conduct of Dallas Fire could be characterized by any of these definitions. A corporation like Dallas Fire can act only through its agents. *See Gros,* 818 S.W.2d at 912. The evidence relating to Jennings's conduct supports the jury's finding as to Dallas Fire. The record reflects that Stumph testified that he was told by Jennings to continue paying premiums to Harvey, that Harvey was a "good man," and that Jennings would contact Stumph if there was a "problem." Although Jennings denied making these statements, the jury apparently chose to disbelieve her. Jennings did not disclose to Stumph Dallas Fire's recent suspension of Harvey. Dallas Fire does not dispute this fact, rather it defends the nondisclosure as one of its "sound business practices." It was within the jury's province to decide whether withholding this information was a failure to state a material fact.

Considering all the evidence as we must, *see Westech Engineering,* 835 S.W.2d at 196, we hold that the evidence was sufficient to support the finding that Jennings failed to state a material fact, made an untrue statement of material fact, or made a statement in such a manner as to mislead a reasonably prudent person to a false

conclusion of a material fact. Dallas Fire's third issue is overruled.

*B. Unconscionability*

■■ ■■ Dallas Fire's fourth issue attacks the legal and factual sufficiency of the jury finding that Dallas Fire engaged in an unconscionable action or course of action. To review the evidence under a no-evidence point, we consider all the evidence in the light most favorable to the prevailing party, including every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 755 (Tex.1970); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *See Crye,* 907 S.W.2d at 499; *Moriel,* 879 S.W.2d at 25. With regard to the factual-sufficiency challenges, we again consider all the evidence and uphold the jury's verdict unless we find that (1) the evidence is too weak to support the finding, or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Garza,* 395 S.W.2d at 823; *Westech Eng'g,* 835 S.W.2d at 196.

The jury was instructed that for its actions to be unconscionable, Dallas Fire must have taken "advantage of the lack of knowledge, ability, experience, or capacity of [Stumph] to a grossly unfair degree" or acted in a way that resulted "in a gross disparity between value received and consideration paid in a transaction involving transfer of consideration." The evidence previously detailed shows that Dallas Fire's agent, Jennings, misrepresented the company's relationship with Harvey. Evi-

dence of a misrepresentation is sufficient to support a finding of unconscionable conduct. *Gros,* 818 S.W.2d at 913. In addition, the supreme court has held that an insurer's failure to disclose that its agent's authority to write coverage had been withdrawn was unconscionable. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518–19 (Tex.1988).

We hold the evidence to be both legally and factually sufficient to support the jury's finding that Dallas Fire's conduct toward Stumph was unconscionable and overrule Dallas Fire's fourth issue.

C. *Producing Cause*

Although not specifically designated as an issue, Dallas Fire argues in its brief that its actions were not a producing cause of Stumph's injuries "because no coverage existed under the [renewal policy]...." We have determined that coverage did exist under the first policy and that Stumph could have reasonably believed, from Jennings's statements to him, that he could rely on Harvey in renewing his Dallas Fire policy.

In addition, there is both legally and factually sufficient evidence that Dallas Fire was the producing cause of Stumph's injuries. This Court in *Gros* found an insurance company to be a producing cause of the damages not covered by the policy where the homeowners testified that if they had known the truth about coverage, they would have tried to obtain other insurance coverage. *See Gros,* 818 S.W.2d at 913–14. Stumph testified that had he known the truth about Harvey's status with Dallas Fire, he would have sought coverage through another agency.

D. *Actual Damages*

■ ■ By its fifth issue, Dallas Fire's challenge to the legal sufficiency of the evidence of actual damages is not a no-evidence allegation. Instead, it argues that "these damages must fall because ... the claims in [the Byram] lawsuit ... were not covered claims." In addition, Dallas Fire had "no duty to defend nor indemnify"

Stumph for or on those claims. This argument is essentially a reassertion of Dallas Fire's contention that the Byram claims are not covered under the first policy and has already been analyzed.

The factual sufficiency of the damages is established by the district-court record. Stumph settled with Byram for $14,500. Dallas Fire cannot avoid paying Stumph this amount merely because Stumph paid the money as a settlement to Byram, instead of directly to the car owners; however, Dallas Fire can attack the reasonableness of the settlement. *See Texas Prop. & Cas. Ins. Guar. Ass'n v. Boy Scouts of Am.,* 947 S.W.2d 682, 691–92 (Tex.App.—Austin 1997, no writ). The evidence before the jury included testimony from Stumph and Gary Stillwell, president of Byram. Both testified as to the damages to the vehicles in the garage, including dents in the vehicles caused by falling concrete and stains caused by the leaking chemicals. Stillwell testified that he had received complaints from eight to twelve car owners and lost two suits by car owners to recover damages. The two lawsuits lost by Byram resulted in it paying between $2,000 and $4,000 to the car owners for new "paint jobs." There was testimony that the cost of a "paint job" was about $1,500. If the eight to twelve complaints involved new "paint jobs," Stumph could owe between $12,000 and $18,000. In addition, an expert witness testified that Stumph's settlement was reasonable. Finally, the jury was entitled to include damages in the form of attorney's fees Stumph had to pay in his defense of the Byram suit. Considering all of the evidence, there was sufficient evidence to support the jury's finding of damages. Dallas Fire's fifth issue is overruled.

**Mandatory Treble Damages**

■ ■ Stumph complains, in his only issue, that the district court should have trebled actual damages after a finding by the jury of a "knowing" violation of the insurance code. The 1994 version of the insurance code controls this

dispute.[11] *See* Act of April 5, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex.Gen.Laws 395, 395 (Tex.Ins.Code Ann. art. 21.21, § 16, since amended). Under the 1994 version of article 21.21, "[i]f the trier of fact finds that the defendant *knowingly* committed the acts complained of, the court *shall* award, in addition, two times the amount of actual damages...." *Id.* (emphasis added). The language of the statute is clear—once knowing misconduct is found under article 21.21, treble damages are mandatory. *Gros,* 818 S.W.2d at 917.

Dallas Fire's only answer to the issue of trebling is that Stumph "presented absolutely no evidence to support a finding that Dallas Fire committed a 'knowing' violation of the Deceptive Trade Practices Act or the Texas Insurance Code." "Knowingly" means "actual awareness of the falsity, unfairness, or deception of the act or practice made the basis for a claim for damages under [the insurance code]. 'Actual awareness' may be inferred where objective manifestations indicate that a person acted with actual awareness." Tex.Ins. Code Ann. art. 21.21, § 2 (West Supp. 2000). The supreme court has expounded:

> "Actual awareness" does not mean merely that a person knows what he is doing; rather, it means that a person knows that what he is doing is false, deceptive, or unfair. In other words, a person must think to himself at some point, "Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway."

*St. Paul Surplus Lines Ins. Co., Inc. v. Dal–Worth Tank Co., Inc. .,* 974 S.W.2d 51, 54 (Tex.1998).[12]

The jury found that Dallas Fire knowingly engaged in a false, misleading, or deceptive act or practice or knowingly engaged in an unconscionable action or course of action that was a producing cause of damages to Stumph. In the face of a challenge to the legal sufficiency of the evidence, we must affirm the jury's answer if we find more than a scintilla of evidence that Dallas Fire's conduct fit within the definition of "knowingly." *See Crye,* 907 S.W.2d at 499. The record shows that Liz Jennings told Stumph to continue sending premiums to Harvey, even though she knew that Dallas Fire had already sent a notice of termination to Harvey. Jennings also said that Harvey was a "good man" and that she would contact Stumph if there was a "problem." Given these facts, reasonable minds could arrive at the finding of the jury that Jennings acted "knowingly"; thus, we have found more than a scintilla of evidence. *See id.*

The district court erred in awarding Stumph only actual damages; the court should have awarded him mandatory treble damages. We sustain Stumph's issue.

## CONCLUSION

Having sustained Stumph's issue and overruled all of Dallas Fire's issues, we modify the judgment of the district court. The judgment is modified to additionally award Stan Stumph two times the amount of his actual damages. The judgment, as modified, is affirmed.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On motion for rehearing, Stumph requests that we "clarify and/or further modify" the district-court judgment to reflect an attorney's fee award of 33% of the damages awarded him in the judgment as modified by our November 16, 2000, opin-

---

11. A cause of action accrues on the date the insurer first denies coverage. *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 100 (Tex.1994). Dallas Fire denied coverage in October 1994.

12. *St. Paul Surplus Lines Insurance Co., Inc. v. Dal-Worth Tank Co., Inc.,* involved viola-
tions of the DTPA, but the definitions of "knowingly" in both statutes include the term "actual awareness." *See Dal–Worth Tank,* 974 S.W.2d at 54; Tex.Bus. & Com.Code Ann. § 17.45(9) (West Supp.2000).

ion and judgment. We express no opinion as to whether the attorney's fees awarded by the district court can or should be modified, *see Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex.1997), and reverse and remand this issue to the district court for further consideration.