NO. 07-06-0156-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



AUGUST 15, 2006



______________________________




MICHAEL JESUS COY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY;



NO. 703172; HONORABLE MICHAEL DENTON, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

 Following a plea of not guilty, appellant, Michael Jesus Coy, was convicted of
assault by bodily injury and sentenced to one year confinement and a $4,000 fine, probated
in favor of one year community supervision. Presenting three issues, appellant contends
(1) the hearsay statements of the victim admitted over his objection violated his right to
confrontation under the United States Constitution, (2) he was denied effective assistance
of counsel, and (3) the evidence was factually insufficient to support his conviction. We
affirm.

 In June 2005, appellant was arrested and charged with assaulting his wife during
a dispute at the couples' home. Despite multiple subpoenas, the victim failed to appear for
trial. The State proceeded with its case by offering the victim's statements through the
testimony of the two police officers who investigated the complaint. Counsel for appellant
objected to hearsay; however, the court admitted the testimony under the excited utterance
exception of Rule 803(2) of the Rules of Evidence. Appellant was subsequently convicted
of the offense.

 By his first issue, appellant contends that by admitting the victim's out-of-court
statements, the trial court violated the Confrontation Clause of the Sixth Amendment to the
United States Constitution. Although he concedes that he did not object on constitutional
grounds at trial, appellant maintains that because the State mentioned the case of
Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), he was not
required to make a separate Confrontation Clause objection. We disagree. 

 As a prerequisite to appellate review, a defendant must make a timely request,
objection, or motion stating the grounds with sufficient specificity to apprise the trial court
of his complaint. Tex. R. App. P. 33.1(a). The purpose of this requirement "is to give to the
trial court or the opposing party the opportunity to correct the error or remove the basis for
the objection." Martinez v. State, 22 S.W.3d 504, 507 (Tex.Cr.App. 2000). Recently, the
Court of Criminal Appeals has made it clear that an objection to hearsay does not preserve
error on Confrontation Clause grounds. Reyna v. State, 168 S.W.3d 173, 179 (Tex.Cr.App.
2005); Paredes v. State, 129 S.W.3d 530, 535 (Tex.Cr.App. 2004). In addition, objections
below that do not comport with those uttered on appeal are generally not preserved for
review. Wilson v. State, 71 S.W.3d 346, 349 (Tex.Cr.App. 2002). Consequently,
appellant's first issue presents nothing for review and is overruled.

 Alternatively, by his second issue, appellant argues that because counsel failed to
preserve error on Confrontation Clause grounds, he received ineffective assistance of
counsel. We disagree. 

 Ineffectiveness of counsel is reviewed under the standard in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a
defendant must establish (1) counsel's performance was deficient (i.e., fell below an
objective standard of reasonableness), and (2) there is a reasonable probability that but for
counsel's deficient performance, the result of the proceeding would have been different, a
reasonable probability being a probability sufficient to undermine confidence in the
outcome. Rylander v. State, 101 S.W.3d 107, 110 (Tex.Cr.App. 2003); Hernandez v. State,
726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other words, appellant must demonstrate by a
preponderance of the evidence that the deficient performance prejudiced his defense. 
Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002); Thompson v. State, 9 S.W.3d
808, 813 (Tex.Cr.App. 1999). Failure to make the required showing of either deficient
performance or sufficient prejudice defeats the ineffectiveness claim. Thompson, 9 S.W.3d
at 814 (citing Strickland, 466 U.S. at 700). The adequacy of defense counsel's assistance
is based upon the totality of the representation rather than by isolated acts or omissions of
trial counsel. Id. Although the constitutional right to counsel ensures the right to
reasonably effective counsel, it does not guarantee errorless counsel whose competency
or accuracy of representation is to be judged by hindsight. Ingham v. State, 679 S.W.2d
503, 509 (Tex.Cr.App. 1984); Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). 
Furthermore, appellate review of trial counsel's representation is highly deferential and
presumes that counsel's conduct fell within the wide range of reasonable and professional
representation. See e.g., Andrews v. State, 159 S.W.3d 98, 101 (Tex.Cr.App. 2005); Bone
v. State, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002). To defeat the presumption of reasonable
professional assistance, any allegation of ineffectiveness must be firmly founded in the
record. Thompson, 9 S.W.3d at 813-14.

 In the present case, the record fails to demonstrate counsel's performance fell below
an objective standard of reasonableness. Counsel vigorously cross-examined the State's
witnesses, attempted to discredit their version of events, and repeatedly attacked the
State's failure to produce the photographs of the victim's injuries. He also made pertinent
objections throughout the trial, most notably, he lodged a valid, albeit unsuccessful,
hearsay objection under the Rules of Evidence prior to the introduction of the witnesses
out-of-court statements. Contrary to appellant's assertion, there are a number of
conceivable reasons why counsel might have declined to object on confrontation grounds. 
For example, as the State points out, he may have simply believed that the testimony was
admissible, making an objection inappropriate. SeeThompson, 9 S.W.3d at 814. 

 Based on the record before us and provided the presumption that trial counsel's
conduct falls within the wide range of reasonable and professional representation, no
reversible error is demonstrated. See Bone, 77 S.W.3d at 833; Mallett v. State, 65 S.W.3d
59, 63 (Tex.Cr.App. 2001). Appellant's second issue is overruled.

 By his third issue, appellant claims that without the victim's hearsay statements, the
State's evidence is factually insufficient to support his conviction. However, we conduct a
factual sufficiency analysis by considering all the evidence before the jury--whether proper
or improper--so that we can make an assessment from the jury's perspective. Miles v.
State, 918 S.W.2d 511, 512 (Tex.Cr.App. 1996). Because we cannot conduct a sufficiency
review without considering the victim's out-of-court statements, appellant's third point
presents nothing for review and is overruled. Fuller v State, 827 S.W.2d 919, 931
(Tex.Cr.App. 1992).

 Accordingly, the trial court's judgment is affirmed.

 Don H. Reavis

 Justice


Do not publish.



 look outside the pleadings, and may not "imagine factual
scenarios which might trigger coverage." Id. at 142; St. Paul Ins. Co. v. Texas Dept. of
Transp., 999 S.W.2d 881, 885 (Tex.App.--Austin 1999, pet. denied). An insurer's duty to
defend arises if the factual allegations against the insured, when fairly and reasonably
construed, state a cause of action potentially covered by the policy. National Union, 939
S.W.2d at 141. A duty to defend any of the claims against an insured requires the insurer
to defend the entire suit. Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex.App.--Austin 2000, no pet.).

Policy Provisions

 Hicks' Allstate policy contained the following definitions:

 "Occurrence" means an accident, including exposure to conditions, which
results in bodily injury or property damage during the policy period.

 "Bodily injury" means bodily harm, sickness or disease. 

 "Property damage" means injury to, destruction of, or loss of use of
property.

 The liability coverage section of the policy contained the following language:

 If a claim is made or a suit is brought against an insured for damages
because of bodily injury or property damage caused by an occurrence to
which this coverage applies, [Allstate] will . . . provide a defense at [its]
expense by counsel of [its] choice even if the suit is groundless, false or
fraudulent.


Ambiguity of Term "occurrence" in Policy

 We initially address Hicks' contention that the term "occurrence" as used in the
policy is patently ambiguous, and must therefore be construed to provide coverage. 
Insurance policies are contracts. Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 665 (Tex.
1987). Whether a contractual term is ambiguous is a question of law. Columbia Gas
Trans. Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). A contract is not
ambiguous if it can be given a definite meaning as a matter of law. Id.

 Hicks' argues that the differing constructions given the term "occurrence" by Texas
courts in occurrence liability insurance policies demonstrate that the term is ambiguous. 
As examples Hicks cites the discussion in American Physicians Ins. Exchange v. Garcia,
876 S.W.2d 842, 853, n.20 (Tex. 1994), regarding different coverage-triggering rules
applied by courts in other jurisdictions, and compares results reached in Dorchester
Development Corp. v. Safeco Ins. Co., 737 S.W.2d 380 (Tex.App.-Dallas 1993, no writ),
Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co., 852 S.W.2d 252
(Tex.App.-Dallas 1993, no writ.), and Pilgrim Enterprises, Inc. v. Maryland Cas. Co., 24
S.W.3d 488, 495 (Tex.App.--Houston [1st Dist.] 2000, no pet.). 

 Hicks' argument is not persuasive. As the cases he cites demonstrate, the term
"occurrence" is typically a defined term in liability insurance policies. See Cullen/Frost
Bank, 852 S.W.2d at 257. But see State Farm Lloyds, v. Williams, 960 S.W.2d 781, 782
(Tex.App.-Dallas 1997, writ denied) (term not defined in homeowners policy). Although
there are similarities in the definitions of the term contained in the policies at issue in the
cases Hicks cites, they are not identical. That the term is given differing constructions in
different cases involving different policies is not surprising, and does not demonstrate that
the term is ambiguous in the particular policy at issue here.

Application of Eight-Corners Rule

 In his motion for partial summary judgment and in his brief on appeal, Hicks lists six
factual allegations from the Duddings' pleadings that he contends give rise to Allstate's
duty to defend him. Summarized, those allegations are: (1) that on or about February 15,
2000, the Duddings determined for the first time that the residence was contaminated with
mold; (2) the existence and growth of the mold was a direct result of the introduction of
water within and under the house from a cracked sewer pipe and other causes that were
present during the policy period; (3) the Duddings suffered health problems and injury to
their "physical and mental well being" from their exposure to the mold; (4) the Duddings
were present on the premises before the closing and could then have been exposed to the
mold; (5) Hicks was guilty of negligence and not simply wrongful intentional conduct; and
(6) the Duddings suffered property damage, including both injury to and loss of use of
property.

 Allstate asserts that the Duddings did not allege bodily injury or property damage
caused by an occurrence. This is so, Allstate argues, because the origin of the damages
alleged by the Duddings was not an accident, but was Hicks' intentional misrepresentations
made in connection with the sale of the residence. In response to Hicks' argument that the
Duddings' amended pleadings alleged injury and damage from Hicks' negligence and not
only from his intentional conduct, Allstate argues that a plaintiff's factual allegations control,
not the label placed on the cause of action, and that the Duddings' mere allegation of a
negligence cause of action was not sufficient to create a duty to defend Hicks. Allstate
further argues that the policy's intentional injury exclusion precludes coverage. 

 Because Hicks takes the position that the claims added by the Duddings' third and
fourth amended petitions against him are of a different nature from those asserted in their
previous pleadings, alleging bodily injury and property damage from exposure to
conditions, within the definition of occurrence in the policy, we first address his arguments
concerning those allegations.

 In his motion for partial summary judgment, Hicks argued the Duddings sought
recovery for bodily injury and property damage, as those terms are defined in the policy,
and the facts on which those claims were based were "occurrences" under the policy. For
purposes of analysis of Hicks' argument, we will assume that the Duddings' allegation that
they had suffered medical problems as a result of exposure to mold is an allegation of
bodily injury as that term is defined in the policy, and that the allegations the Duddings lost
use of the house due to the presence of mold meet the policy's definition of "property
damage." The predicate questions are whether the bodily injury and property damage
were the result of occurrences as defined under the policy. To be the result of an
occurrence, as defined in the policy, the injury or damage must result during the policy
period. Our specific inquiry, then, is whether the bodily injury and property damage alleged
occurred during the policy period.

 For our purpose of addressing the Duddings' claims, it is important to note that the
policy period with which we are concerned is quite short, extending, under the reading of
the record most favorable to Hicks, from December 9, 1996 (the day before the closing of
Hicks' sale of the residence to the Duddings) through 12:01 a.m. on March 4, 1997.

A. Claims of Bodily Injury from Exposure to Mold

 The Duddings' petition alleges that they "determined" on or about February 15,
2000, that the residence was contaminated with mold. The petition further states that the
Duddings had occupied the residence since December 1996, "totally unaware" of the mold
contamination, but that their exposure to mold in the residence caused them personal
injuries including headaches, respiratory distress and neurological impairment. Hicks
argues that these are claims of bodily injury resulting from the Duddings' exposure to
conditions, and thus are claims resulting from an occurrence, obligating Allstate to provide 
a defense. To meet the policy definition's requirement that the occurrence result in bodily
injury during the policy period, Hicks makes a two-step argument: first, he urges that we
apply here the holding of Pilgrim Enterprises, 24 S.W.3d 488, in which the court construed
the definitions of "occurrence" in comprehensive general liability policies; and, secondly,
he argues that, under the allegations in the petition, the Duddings could have been
exposed to mold during the policy period.

 In Pilgrim Enterprises, the insured, Pilgrim, operated dry-cleaning businesses and
sought coverage for claims against it by landlords and others alleging property damage
from contamination by perchloroethylene, a chemical used by Pilgrim, and personal injury
from exposure to the same chemical. Id. at 490-91. The policies at issue defined bodily
injury and property damage as that "which occurs during the policy period." Id. at 494. 
Maryland, the insurer, relied on that language as support for its position that any injury
must manifest itself during the policy period. Id. at 495. On appeal of the trial court's
summary judgment in favor of Maryland, the court cited the various "manifestation" rules
by other jurisdictions discussed in American Physicians Ins. Exchange, 876 S.W.2d at 853. 
It then reviewed the approaches taken by Texas courts considering the issue under
commercial general liability policies, and concluded that the issue when injury and damage
occur was "far from settled." 24 S.W.3d at 496. The court held that, for purposes of
resolving the duty to defend, and under the policies' definition of occurrence, both personal
injury and property damage caused by exposure to the chemicals occurred at the time of
the exposure, not at the later time the injury or damage became manifest. 24 S.W.3d at
498. 

 Other courts have concluded that injury or damage occurs under an occurrence
liability policy when it becomes manifest. In Dorchester Development, 737 S.W.2d at 383,
the Dallas Court of Appeals applied a "manifestation" rule in a property damage case. The
same court applied that holding in another property damage case, Cullen/Frost Bank, 852
S.W.2d at 257. 

 Resolution of this case, though, does not require us to decide whether the
"exposure" or "manifestation" rule is applicable here under the Allstate policy. Even were
we to adopt the approach taken in Pilgrim Enterprises and hold that exposure to mold
during the policy period constituted bodily injury under the policy, (3) we would not be able to
agree with Hicks because we cannot accept the second step of his two-step argument. We
do not read the Duddings' petition as alleging that they were exposed to mold during the
policy period. 

 The Duddings' petition did not allege when their bodily injuries (defined in the policy,
recall, as "bodily harm, sickness or disease") from mold manifested themselves. As noted,
the petition alleged that the Duddings suffered injuries as a result of their exposure to mold,
and alleged that they did not "determine" the residence was contaminated with mold until
February 2000.

 The single factual allegation from the Duddings' 41-page fourth amended petition
to which Hicks points in support of his contention that the Duddings alleged exposure to
mold during the policy period is the allegation that one of the family members, the husband
Mike Dudding, was present in the basement of the residence, where there was water
damage, on the day before the closing. The petition did not allege that mold was then
present. Further, there was no suggestion in the Dudding petition that any bodily injury
suffered by Mike Dudding on that occasion would be contagious, so that allegation cannot
in any sense be read as an assertion of exposure (and thus injury, under Hicks' theory) to
the other Dudding family members. (4) Even under a liberal reading of it, that paragraph
cannot fairly be said to allege that the Duddings suffered bodily injury by exposure to mold
on that occasion. Hicks' attempt to link the allegation that Mike Dudding was present in the
basement of the house on the day before closing to the Duddings' claims of bodily injury
seeks to have us read facts into the pleadings and "imagine factual scenarios which might
trigger coverage," but were never alleged in the petition, in violation of the admonitions in
National Union, 939 S.W.2d at 142, and St. Paul Insurance, 999 S.W.2d at 885. 

 The Duddings' allegations of bodily injury from exposure to mold are to be
distinguished from the allegations made in Pilgrim Enterprises and Azrock. In those cases,
the plaintiffs alleged exposure to the injury-causing contaminant during the policy period. 
In Pilgrim Enterprises, the plaintiffs alleged exposure to perchloroethylene during the time
the business was operated and insured by Maryland Casualty, 24 S.W.3d at 494, and in
Azrock, the plaintiffs alleged exposure to asbestos while they were employed in the
processing of asbestos products. 211 F.3d at 251. Here, by contrast, the Duddings
alleged that mold grew in the residence because of moist conditions. (5) But they did not
allege that the residence was contaminated with mold when they bought it, nor did they
allege when the mold formed. Based on the single allegation to which Hicks can direct us,
it is unreasonable to conclude that their petition alleged exposure to mold during the short
policy period in question here. We find that the Duddings did not allege that they suffered
bodily injuries during the policy period, and that the injuries they alleged, even if caused
by Hicks' negligence, were therefore not alleged to be the result of an occurrence under
the Allstate policy.

B. Claims of Property Damage from Exposure to Mold

 The Duddings' petition alleges they learned of the mold contamination in February
2000 and lost use of the house after that time, some three years after the end of Hicks'
policy period. (6) Hicks cites Federated Mutual Ins. Co. v. Concrete Units, Inc., 363 N.W.2d
751, 757 (Minn. 1985), and this court's unpublished opinion in Travelers Indemnity Co. v.
Page & Associates Construction, No. 07-97-338-CV (Tex.App.-Amarillo 1998, pet. denied),
for the proposition that loss of use after a policy period will not preclude coverage. But the
policies at issue in those cases defined property damage to include "physical injury to or
destruction of tangible property which occurs during the policy period, including the loss
of use thereof at any time [.]" As noted, under the policy issued to Hicks, property damage
resulted from an "occurrence" only if the damage or loss of use was during the policy
period. The Duddings' petition does not claim a loss of use during the policy period, and
therefore does not claim property damage resulting from an occurrence under the policy.

C. Claims Other than Mold Exposure Claims

 Hicks does not argue that the Duddings' assertions of property damage arising from 
his alleged misrepresentations and failures to disclose entitle him to a defense of their suit.
We agree with Allstate that any such claims do not give rise to a duty to defend under the
policy because such misrepresentations and failures are not accidents, and any resulting
damage was thus not the result of an occurrence. See Freedman v. Cigna Ins. Co., 976
S.W.2d 776 (Tex.App.-Houston [1st Dist.] 1998, no pet.); State Farm Lloyds v. Kessler, 932
S.W.2d 732 (Tex.App.-Fort Worth 1996, writ denied). We also agree with Allstate's
contention that the facts giving rise to the Duddings' claims for property damage other than
from exposure to mold were Hicks' alleged representations during the sale, and not the
failure of the sewer pipe or other defects in the residence. See Freedman, 976 S.W.2d at
778.

Conclusion

 Concluding that the Duddings did not allege a cause of action against Hicks for
bodily injury or property damage caused by an occurrence, and thus potentially covered
by the Allstate policy, we sustain Allstate's first issue. Issue Two

 Allstate's second issue asserts that the trial court erred in denying summary
judgment for it. We sustain that issue as well. We recognize that our reversal of summary
judgment for Hicks does not establish Allstate's entitlement to summary judgment. G.H.
Bass & Co. v. Dalsan Properties-Abilene, 885 S.W.2d 572, 575 (Tex.App.-Dallas 1994,
no writ). Our review of the record, though, satisfies us that there is no genuine issue as to
any material fact and that Allstate is entitled to judgment as a matter of law on the issue
of its duty to defend Hicks against the Duddings' claims against him. Tex. R. Civ. Proc.
166a(c). For the reasons outlined in our discussion of Allstate's first issue, we conclude
that the Duddings' factual allegations, fairly construed, did not state a cause of action
potentially covered by Hicks' homeowners policy. National Union, 939 S.W.2d at 141. 



Conclusion Having sustained both of Allstate's issues, we reverse the judgment of the trial court
and render judgment declaring Allstate has no duty to defend Hicks against the claims
made by the Duddings and that Hicks take nothing. Tex. R. App. Proc. 43.2(c); 43.3.


 James T. Campbell

 Justice




NO. 07-02-0399-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 10, 2003



______________________________



 ALLSTATE INSURANCE COMPANY, APPELLANT



V.



ALVIN F. HICKS, APPELLEE



_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 51,836-C; HONORABLE PATRICK PIRTLE, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

CONCURRING OPINION


 I agree with the dissenting opinion's discussion of principles on which a motion for
summary judgment must be founded. I concur in rendering judgment for Allstate, however,
because I conclude that Allstate's motion presented the issue on which we grant judgment
in favor of Allstate; albeit without a great amount of emphasis. And, the issue has been
addressed by Hicks without complaint that it was not encompassed within Allstate's motion.



 Phil Johnson

 Chief Justice



NO. 07-02-0399-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 10, 2003



______________________________



 ALLSTATE INSURANCE COMPANY, APPELLANT



V.



ALVIN F. HICKS, APPELLEE



_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 51,836-C; HONORABLE PATRICK PIRTLE, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Dissenting Opinion


 Though I concur with the majority that the summary judgment awarded Alvin F.
Hicks (Hicks) should be reversed, I disagree with the majority's decision to render summary
judgment in favor of Allstate Insurance Co. (Allstate).

 The majority believes that summary judgment should be granted to Allstate because
Michael and Lynnette Dudding (the Duddings) failed to plead a cause of action within the
ambit of Allstate's policy. That contention may be a viable basis for relief. Yet, first it must
be encompassed within a motion for summary judgment filed by Allstate.

 It is well-settled that motions for summary judgment must stand or fall on the
grounds expressly presented therein. McConnell v. Southside Sch. Dist., 858 S.W.2d 337,
341 (Tex. 1993). Consequently, both trial and appellate courts are barred from granting
or affirming summary judgments on grounds that no one mentions. Keifer v. Spring
Shadows Glen, 934 S.W.2d 785, 787 (Tex. App.-Houston [1st Dist.] 1996, writ denied);
Sanders v. Capitol Area Council, 930 S.W.2d 905, 910 (Tex. App.-Austin 1996, no writ). 
This is equally true when the parties tender cross-motions for summary judgment for in that
situation each movant must still carry its own burden to prove its right to judgment, Russell
v. Panhandle Producing Co., 975 S.W.2d 702, 708 (Tex. App.-Amarillo 1998, no pet.), and
neither party may be granted judgment simply because its opponent fails to carry its
burden. Miller & Freeman Ford, Inc. v. Greater Houston Bank, 544 S.W.2d 925, 926 (Tex.
1976), quoting, Tigner v. First Nat'l Bank, 264 S.W.2d 85 (Tex. 1954); Russell v.
Panhandle Producing Co., 975 S.W.2d at 708. 

 Here, the insurer contended, via its motion, that it was entitled to relief solely on the
ground that "the damages alleged by the Duddings were not caused by an accident
because Hick's misrepresentations . . . were the origin of all their damages, and the
policy's intentional injury exclusion precluded coverage." In other words, Allstate believed
itself entitled to judgment because the damages purportedly suffered by the Duddings
arose from intentional conduct, which conduct was not covered by the Allstate policy. 
Nothing was said about being entitled to relief because the Duddings' failed to state a
cause of action within their live pleading. So, Allstate cannot be awarded summary
judgment for the reason relied on by the majority. McConnell v. Southside Sch. Dist.,
supra; Keifer v. Spring Shadows Glen, supra; Sanders v. Capitol Area Council, supra. To
hold otherwise would be to award judgment to Allstate merely because Hicks failed to carry
his burden on appeal; that I can not do. Miller & Freeman Ford, Inc., supra; Russell v.
Panhandle Producing Co., supra. Accordingly, I dissent from the majority's decision to
render summary judgment for Allstate. (7)

 

 Brian Quinn

 Justice













 



1. The Duddings' petition used several terms to refer to the contaminants present in
the residence that they alleged caused their personal injuries, including "fungi, mold and
bacteria," "toxic microorganisms," "toxic molds/fungi," "harmful microorganisms," "harmful
by-products of such organisms," and "toxic microorganisms in the form of mold." We will
use the term "mold" for all of them.
2. Hicks' Allstate renewal policy in the record before us had an effective date of March
4, 1996, and an expiration date of March 4, 1997. The record does not reflect whether,
following the closing of the sale of the home, Hicks cancelled the policy before its stated
expiration date. None of the conclusions we reach in this opinion depend on whether the
policy period expired on March 4, 1997, or before that date.
3. The opinion in Pilgrim Enterprises cites Guaranty National Ins. Co. v. Azrock
Industries Inc., 211 F.3d 239 (5th Cir. 2000), in which the Fifth Circuit predicted that Texas
courts would consider the injury in the case of exposure to asbestos as being "the
subclinical tissue damage that occurs on inhalation of asbestos fibers." 211 F.3d at 244. 
We have nothing in the record before us to indicate that exposure to mold creates the type
of slow-developing "progressive disease" on which the exposure-based test of injury in
Azrock is premised.
4. Paragraph 4.12 of the Duddings' fourth amended petition reads as follows:


 The day before the December 10, 1996, closing, Defendant Hicks showed
Plaintiff Mike Dudding damage in the basement resulting from a water leak(s)
most likely from the plumbing system. Defendant Hicks assured Mike
Dudding that he would fix the problem and resulting damage. Based on his
representation, the Duddings closed the sale of the house the next day
under duress since their family had no other options as they had already sold
their house prior to this sale. Hicks did not fix the water leak and resulting
damage. Since that time, the basement has flooded at least five additional
times as a result of failure of the plumbing system and caused extensive
water damage to the basement and surrounding area. 
5. For example, paragraph 4.20 of the Duddings' fourth amended petition reads as
follows:


 On or about February 15, 2000, the Plaintiffs determined that the Residence
is contaminated with high levels of harmful, toxic microorganisms in the form
of mold/fungi. The existence and growth of such microorganisms is, to the
knowledge of Plaintiffs, a direct result of introduction of water directly into
and under the Residence from a cracked sewer pipe, multiple plumbing leaks
and improper site drainage. The Dudding family has lived at 7701 Tripp since
December, 1996 completely unaware of the toxic microorganisms described
above. The house is replete with fungi, mold and bacteria. Plaintiffs have
extensive health problems because of exposure to this condition. Because
of these problems and the presence of the toxic microorganisms Plaintiffs
were advised by air quality experts to vacate the Residence immediately.
The Residence is uninhabitable.
6. The petition also contains this sentence: "Additionally, certain personal property
owned and/or possessed by Plaintiffs has become contaminated by such organisms and,
as such, is unusable by Plaintiffs." In its context, we read that sentence to allege loss of
use of the personal property in conjunction with loss of use of the residence, and,
therefore, at a time well after Hicks' policy period. 
7. I understand that reversal and remand may do nothing more than expose the litigants to further delay
and cost. Nonetheless, our courts have demanded strict compliance with the provisions of Rule 166a of the
Texas Rules of Civil Procedure. See In re Estate of Thompson, 873 S.W.2d 113, 114 (Tex. App.-Tyler 1994,
no writ) (stating that "because of the severe results, the rule 'must be applied as written'"); Bell Showa Denko
K.K., 899 S.W.2d 749, 759 (Tex. App.-Amarillo 1995, writ denied) (stating that the summary judgment rules
must be strictly construed since it is a harsh remedy).